STATE of Maine

v.

Amy BLAIS, Frank Borghetti, and Stephen White, Jr.

Supreme Judicial Court of Maine.

Argued June 17, 1980.

Decided July 9, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Richard L. Currier (orally), Law Student Intern, for plaintiff.

Kettle & Carter, Edward W. Klein (orally), Burt Kettle, Portland, for Blais.

Juskewitch & Hunter, Susan E. Hunter (orally), Steven A. Juskewitch, Portland, for Borghetti.

Daniel G. Lilley, E. Paul Eggert, Portland (orally), for White.

Before McKUSICK, C. J., and WERNICK, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

Defendants were charged by indictment with armed robbery, 17–A M.R.S.A. § 651(1)(E) (Supp.1979). In its interlocutory appeal from a pretrial order, 15 M.R.S.A. § 2115–A (1980), the State asserts that the Superior Court erred by suppressing, for use at any later trial, the contents of a large, opaque plastic bag found in the trunk of defendants' car during a warrantless search. The Superior Court's decision was grounded on its conclusions that defendants had a reasonable expectation of privacy in the contents of the bag and that there were no exigent circumstances at the time of the search to justify dispensing with a warrant. We deny the State's appeal.

On the afternoon of October 30, 1979, a robbery occurred at Laverdiere's Drug Store on U.S. Route 1 in South Portland. A witness reported the robbery to the South Portland police department and said that the robbers had driven away in a southerly direction (*i. e.*, toward the entrance to the Maine turnpike). The South Portland police dispatcher who received the robbery call had, just a few minutes earlier, received a call reporting the presence at Howard Johnson's, also on U.S. Route 1 near Laverdiere's, of a blue Buick containing a woman and three men, one of whom when sitting in the driver's seat had wrapped in a windbreaker what appeared to be a sawed-off shotgun. The Buick's Massachusetts license plate number was also reported, as was the fact it had left Howard Johnson's going in the direction of Laverdiere's. Immediately after the second telephone call, the dispatcher broadcast over the police radio a report of the armed robbery at Laverdiere's, together with the description of the Buick and its occupants. The dispatcher also telephoned the same information to the state police.

The state police dispatcher said that he received a telephone report of an armed robbery at Laverdiere's, a Buick with Massachusetts plates heading south, and three male and one female suspects armed with two[1] shotguns in the Buick. The state police bulletin containing this information was heard by a state trooper on the Maine turnpike who soon thereafter spotted the Buick driving south near Scarborough Downs. The trooper saw only two people in the car, the driver being a woman, but also noticed that the car's rear was sagging. After following the car for a short distance the trooper, with assistance from other officers nearby, stopped the car, ordered the two visible occupants out, and frisked and handcuffed them. The trooper saw a handgun lying on the floor of the back seat area, then found two shotgun shells in the pocket of a shirt under the front seat. Still looking for the other two suspects and the

shotguns, the trooper used the car keys to open the trunk. Inside the trunk were two men, a sawed-off shotgun, a pill bottle, and a large, green plastic bag.

The defendants and their car were taken to the South Portland police station. About an hour later a South Portland police detective, assisted by an evidence technician, made what he at the suppression hearing asserted was a "routine inventory search." He reopened the trunk where the plastic bag remained in the same condition as when the trunk had been opened at the original stop on the Maine turnpike; it was rolled up in such a manner that the detective could not see inside it nor could he discern its contents from its outward appearance. Without obtaining a search warrant, the officer searched the bag and seized its contents.

Defendants moved to suppress all evidence resulting from the stop and search of their car. After a hearing the Superior Court denied their motion except as to the contents of the large plastic bag. The justice concluded that the police had probable cause to stop the Buick and to open the trunk in order to determine whether any defendants or weapons were inside. The court then turned to the search of the bag, first finding:

> Although the detective conducting the search described this as a "routine inventory" the State does not and could not fruitfully contend that this search was a noninvestigative custodial inventorying of personal effects performed for the protection of both the owner and the police.

Everything discovered in the bag was suppressed because the court found and concluded that the bag "was placed in the trunk in such a position that its contents could not be determined without a search offensive to the privacy rights recognized in [*Arkansas v.*] *Sanders*, [442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)], [*United States v.*] *Chadwick*, [433 U.S. 1, 97 S.Ct.

---

**1.** The South Portland dispatcher apparently erred in transmitting the information available to him, since—so far as the testimony at the

suppression hearing reveals—he had been told of only one shotgun.

2476, 53 L.Ed.2d 538 (1977)], and [*State v.*] *Hassapelis* [Me., 404 A.2d 232 (1979)]." The State now appeals from those rulings of the Superior Court.[2]

For a search to be reasonable within the meaning of the Fourth Amendment it must satisfy two essentials, namely, "(1) the existence of probable cause, and (2) the prior determination of such probable cause by a neutral and detached magistrate whose determination is reflected in the issuance of a search warrant . . . ." *State v. Barclay*, Me., 398 A.2d 794, 797 (1979), quoting *State v. Richards*, Me., 296 A.2d 129, 135–36 (1972). The second requirement of a search warrant may be dispensed with if the State establishes, by a preponderance of the evidence, either the absence of any reasonable expectation of privacy in the item searched or the existence of special exigent circumstances. *See State v. Johnson*, Me., 413 A.2d 931, 933 (1980); *State v. Barclay, supra.* We must therefore first examine whether there was probable cause to search before examining the disputed Superior Court ruling that a search warrant was required before the plastic bag could be opened and its contents examined.

#### I. *Probable Cause for Search*

We conclude, initially, that the state police had probable cause to stop the Buick and search its interior and trunk, based on the following collective[3] information known to the police at the scene of the stop. The South Portland police dispatcher received a telephone report about a suspicious blue Buick, with a Massachusetts license number, containing three men and one woman. One of the men in the car had picked up a sawed-off shotgun and wrapped it in a blue windbreaker. The car then drove off in a direction that would have taken it toward nearby Laverdiere's. Within minutes of this telephone call, the dispatcher received a second call reporting a robbery at Laverdiere's; the escape car had headed in a southerly direction. He conveyed all this information, including the Buick's license plate number, to the state police dispatcher, who relayed it in turn to the troopers patrolling the turnpike. The troopers were told that there were four suspects and two sawed-off shotguns in the Buick. When the Buick was spotted traveling south on the turnpike not far from South Portland (and Laverdiere's), only two passengers were in sight, but their car was sagging heavily in the rear and traveling slowly.

Under these circumstances, the state troopers had probable cause to stop the Buick and, upon finding only two people and no shotguns in the interior of the car, they had probable cause to go on to search the sagging trunk. The Superior Court's finding of probable cause to stop the Buick on the turnpike and search it, including its trunk, was not clearly erroneous. *See State v. Carter*, Me., 391 A.2d 344, 346 (1978).

#### II. *No Exception to Warrant Requirement*

Although meeting its initial burden of demonstrating probable cause sufficient to justify stopping the Buick, searching it on the spot, and seizing the opaque plastic bag, the State has failed to establish the need to search the bag without prior judicial approval. The State first argues that the warrantless search performed in this case was proper because it was a "pure" automobile search, as opposed to the search of a container or package or parcel. Thus, relying upon *Chambers v. Maroney*, 399 U.S. 42,

---

2. In its reply brief to this court the State contends for the first time that defendants do not have standing to contest the warrantless search of the bag. The State never challenged defendants' standing at the suppression hearing, nor did the Superior Court address the issue. Consequently, the issue has not been preserved for appellate review. *See State v. Russo*, Me., 400 A.2d 383 (1979); *State v. Thibodeau*, Me., 317 A.2d 172, 183 (1974).

3. In a situation involving communications between police officers, probable cause is evaluated from the collective information of all officers working together to solve a reported crime. *See State v. Fletcher*, Me., 288 A.2d 92, 97 (1972); *State v. Smith*, Me., 277 A.2d 481, 488–89 (1971).

90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the State urges that the officer's right immediately to search the car on the highway—a right premised upon the exigent circumstances arising from a vehicle's mobility—still obtained after the police had removed the car to the police station. We reject that contention.

■ Both this court, in *State v. Hassapelis*, Me., 404 A.2d 232, 237 (1979), and the United States Supreme Court, in *Arkansas v. Sanders*, 442 U.S. 753, 762–65, 99 S.Ct. 2586, 2592–2594 (1979), and *United States v. Chadwick*, 433 U.S. 1, 13–15, 97 S.Ct. 2476, 2484–2486, 53 L.Ed.2d 538 (1977), have concluded that although the right to seize and search an automobile establishes the right to seize a container found in the vehicle, the right to search the container itself, without a warrant, must be independently established. Consequently, here, the alleged exigency requiring search of the opaque plastic bag "must be assessed at the point immediately before the search" at the police garage, and not when the bag was initially seized on the turnpike. *Arkansas v. Sanders, supra* at 763, 99 S.Ct. at 2593; *United States v. Chadwick, supra* at 13, 97 S.Ct. at 2484. In *Sanders* the Court specifically rejected the argument, advanced by the prosecution in that case, as it is here, that if under *Chambers v. Maroney* the police can seize the container, they are automatically entitled to search it. 442 U.S. at 765 n.14, 99 S.Ct. at 2594 n.14. Once the container is securely within the control of the police, the mere fact that it was seized in an automobile does not by itself establish a greater need or justification for a warrantless search. *Id.* at 763–64, 99 S.Ct. at 2593. At the time of the later search of the container, no exigent circumstances existed.[4] Requiring the police to obtain judicial approval for the search in no way would have a "likelihood of frustrating the fulfillment of the governmental interest" in investigating

and prosecuting crime, *see State v. Richards, supra,* at 136.

■ The State's second argument is that there was no need for a search warrant because defendants had no reasonable expectation of privacy in the contents of the bag. However, the bag, even though taken from an automobile, is protected exactly as much as a similar container taken from a home and is subject to being searched without a warrant only if its contents are in plain view or if the nature of the container is such that its contents are equivalent to being in plain view. *See Arkansas v. Sanders, supra* at 764 n.13, 99 S.Ct. at 2593 n.13 (contents of burglar tools kit or gun case can be inferred from its outward appearance; therefore, there is no reasonable expectation of privacy). Holding that an unlocked suitcase deserves the full protection of the Fourth Amendment, the Court in *Sanders* went further than it had in *Chadwick*, which involved a double-locked, 200-pound footlocker; the Court found the differences in size and locking not to be material. *Arkansas v. Sanders, supra* at 762 n.9, 99 S.Ct. at 2592 n.9.

■ In the case at bar, defendants took the precaution of placing their property in an opaque bag of a type that does not by its nature display its contents, and of rolling up the bag so that its contents were not visible to anyone searching the trunk of their car. The Superior Court justice found as a fact that the bag "was placed in the trunk in such a position that its contents could not be determined without a search offensive to the privacy rights recognized in *Sanders, Chadwick* and *Hassapelis.*" We cannot say that his finding of a reasonable expectation of privacy was clearly erroneous. Accordingly, we affirm the justice's conclusion that on the facts of this case, defendants had a reasonable expectation of privacy in the contents of the bag such that

---

4. Although a container found in a vehicle's trunk might be searched without a warrant in situations of special exigency, *e. g.*, the police have reason to believe there are weapons or explosives in the container, "such exigencies will depend upon the probable contents of the

[container] and the suspect's access to those contents . . . ." *Arkansas v. Sanders*, 442 U.S. 753, 763 n.11, 99 S.Ct. at 2593 (1979). In the case at bar the State has never asserted any such special exigency.

when it was removed from the car at the police garage, the warrantless search of the bag violated their Fourth Amendment rights.[5]

### III. *No Proof of an Inventory Search*

██ The Superior Court justice rejected the investigating detective's characterization of his search of the Buick as a "routine inventory" and found as a fact that the search was not the "noninvestigative custodial inventorying of personal effects performed for the protection of both the owner and the police" required by *State v. Hudson*, Me., 390 A.2d 509 (1978), and *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). We cannot say that the findings of fact that the justice must be assumed to have made to support his conclusion were clearly erroneous. *See State v. Walker*, Me., 341 A.2d 700, 702–03 (1973).

The only evidence the State adduced to establish the requisite standard practice of inventorying was the unelaborated assertion to that effect by the detective. There was no independent evidence of established police department rules or policy, nor any evidence that the search in this case was in fact undertaken and performed pursuant to such rules. The evidence was thus insufficient, under *Hudson* and *Opperman*, to establish the existence of an inventory search that would dispense with the requirement for a warrant. The Superior Court justice would have been justified in finding that no standard practice or policy of custodial inventorying existed or, based on his assessment of testimonial credibility, that the

search was in fact not for inventory purposes. Consequently, we cannot say that the Superior Court erred in concluding that the warrantless search of the plastic bag could not be justified as an inventory of an impounded vehicle and its contents.

For all the reasons stated above, the entry must be:

Appeal denied.

Pretrial order suppressing contents of the large, opaque plastic bag affirmed.

All concurring.

---

5. In deciding whether protection is to be accorded to a large, opaque plastic bag, we must go beyond *Sanders* and *State v. Hassapelis*, Me., 404 A.2d 232 (1979) (zippered gym bag), to apply the principles enunciated in those cases to one of the types of containers about which the dissent in *Sanders* was concerned:

   [A]n orange crate, a lunch bucket, an attache case, a duffel bag, a cardboard box, a backpack, a totebag, and a paper bag. Which of these may be searched immediately and which are so "personal" that they must be impounded for future search only pursuant to a warrant?

*Arkansas v. Sanders, supra* at 772, 99 S.Ct. at 2597 (Blackmun, J., dissenting). We are not, however, the first court since the decision in *Sanders* that has given Fourth Amendment protection to items such as those listed by Justice Blackmun. *See, e. g., United States v. Dien*, 609 F.2d 1038 (2d Cir. 1979), *aff'd on rehearing*, 615 F.2d 10 (2d Cir. 1980) (sealed cardboard boxes); *United States v. Miller*, 608 F.2d 1089 (5th Cir. 1979) (plastic portfolio); *United States v. Meier*, 602 F.2d 253 (10th Cir. 1979) (unlocked backpack). *Cf. State v. Walker*, Me., 341 A.2d 700, 704–05 (1975) (brown paper bag, being opaque, does not automatically disclose its contents).