STATE of Maine

v.

John Francis HOWES.

Supreme Judicial Court of Maine.

Argued Jan. 16, 1981.

Decided July 17, 1981.

---

David M. Cox, Dist. Atty., R. Christopher Almy, Gary F. Thorne (orally), Asst. Dist. Attys., Bangor, for plaintiff.

Zendzian & Anderson, Paul Zendzian (orally), Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Relying on the authorization set forth in 15 M.R.S.A. § 2115-A(2),[1] the State of Maine has appealed from a judgment of acquittal entered in favor of the defendant John Francis Howes. The presiding justice ordered such judgment entered notwithstanding the verdict of a jury which found defendant guilty of the crime of arson committed in violation of 17-A M.R.S.A. § 802.

The indictment against defendant, returned on March 5, 1979 to the Superior Court (Penobscot County), charged that the crime of arson had been committed on April 17, 1977 in connection with a fire that destroyed an uninhabited house, barn and shed situated in Patten and owned by Thomas Gramling. Defendant was accused of having been an accomplice to the arson, by having driven an automobile that, at the time and in the vicinity of the fire, had picked up several people who allegedly set the fire.[2]

At trial, after the State concluded its presentation of evidence, defendant moved for judgment of acquittal on the ground that the State's evidence was insufficient to establish beyond a reasonable doubt either that the fire was the result of arson or that defendant was legally accountable as an accomplice. This motion was denied, and defendant proceeded to present evidence in his own behalf. At the close of all the evidence defendant renewed his motion for judgment of acquittal. The presiding justice made no response to the motion. After the jury returned its verdict finding defendant guilty as charged, counsel for the defendant reminded the presiding justice that the pre-verdict motion for judgment of acquittal remained for a ruling to be made. It appears, however, that the presiding justice continued to avoid making a ruling. The next day, defendant filed a motion stating that he

---

1. This provision of the statute reads:

   "2. *Appeals after trial.* An appeal may be taken by the State from the Superior Court or the District Court to the law court after trial and after a finding of guilty by a jury or the court from the granting of a motion for a new trial, from arrest of judgment, from dismissal or from other orders requiring a new trial or resulting in termination of the prosecution in favor of the accused, when an appeal of the order would be permitted by the double jeopardy provisions of the Constitution of the United States and the Constitution of Maine."

2. None of these other people who allegedly set the fire have ever been prosecuted.

"makes and renews his motion for judgment of acquittal made at the close of all the evidence"

and also asks, in the alternative, for a new trial.

After holding a hearing on this motion, the presiding justice granted defendant a new trial because "the verdict was contrary to the weight of the evidence." Soon thereafter, the State filed a motion asking the justice to reconsider his order of a new trial since, according to the State, the ground referred to by the justice is not a proper ground under the law of Maine for granting a new trial. The State also appealed to the Law Court from the grant of a new trial.

Subsequently, at the request of both parties, the Law Court remanded the case to the Superior Court for "such action as the presiding justice deems necessary." On remand, the presiding justice vacated his order of a new trial and directed entry of judgment of acquittal on the ground that "the verdict was contrary to the weight of the evidence." [3]

### 1.

We discuss, first, whether the State's appeal is authorized under 15 M.R.S.A. § 2115–A(2). The precise issue is whether the State's appeal from a judgment of acquittal, entered upon the order of the presiding justice after, and notwithstanding, return of a jury verdict of guilt, on the ground that the evidence was inadequate in law to sustain a conviction, would be consistent with the protection against double jeopardy afforded by the Fifth Amendment to the Constitution of the United States [4] and by Article I, § 8 of the Constitution of Maine. [5]

Defendant argues that the double jeopardy protection would be violated, here, because defendant had moved at the close of all the evidence, when no jury verdict had been returned, for an order that judgment of acquittal be entered. In this context, says defendant, notwithstanding that Rule 29 M.R.Crim.P. authorizes the presiding justice to

"reserve the decision on . . . [such] motion, submit the case to the jury and decide the motion . . . after it returns a verdict of guilty . . .",

a judgment of acquittal ordered after the return of a jury verdict of guilty must be held to "relate back" to the time before the case went to the jury when defendant had moved, at the close of all the evidence, for a judgment of acquittal. Thus, here, defendant maintains, the double jeopardy issue is to be approached on the basis that the judgment of acquittal was ordered entered before the return of the jury verdict of guilty. On this view, defendant argues, the law of Maine makes *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) inapplicable, and causes *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) to become precedentially controlling and to require the conclusion that the State's appeal in this case cannot lie under 15 M.R.S.A. § 2115–A(2) because it would expose defendant to double jeopardy.

We reject defendant's "relation back" conception of the effect of the option Rule 29 gives the presiding justice to reserve decision on a motion for judgment of acquittal and to decide the motion after the jury has returned a verdict of guilty.

Our discussion explaining this conclusion begins with two foundational points.

---

**3.** The presiding justice's authority for ordering the entry of a judgment of acquittal arises from Rule 29 M.R.Crim.P. Under that rule judgment of acquittal may be ordered only "if the evidence is insufficient to sustain a conviction . . . ." Hence, the parties agree, as do we, that the presiding justice's phraseology was intended by him to mean that the evidence was legally insufficient to support a conviction.

**4.** The Double Jeopardy Clause of the Fifth Amendment to the federal Constitution states: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; . . . ."

**5.** Article I, Section 8 of the Constitution of Maine provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or limb."

■ First, we interpret the double jeopardy provision of the Constitution of Maine to afford protection essentially like that guaranteed by the double jeopardy clause of the Fifth Amendment, as binding on the states through the "due process of law" clause of the Fourteenth Amendment, to the Constitution of the United States. Hence, we heed the decisions of the Supreme Court of the United States on double jeopardy in two respects: we follow them as precedentially controlling in delineating the binding effect on the states of the federal Constitution's protection against double jeopardy, and we look upon them as most helpful guides regarding the scope of the protection against double jeopardy afforded by the Constitution of Maine.

■ Second, we construe the provisions of 15 M.R.S.A. § 2115–A(2) conferring appeal rights on the State in criminal cases as manifesting the intendment of the Maine legislature to be at least as broad as was that of the Congress of the United States when it enacted 18 U.S.C. § 3731. We so conclude not only in light of the "liberal construction" mandate in § 2115–A(6) but also because the textual language of § 2115–A(2) is even more comprehensive in scope than the language of the federal statute. We therefore take the legislative purpose to be to make the State's right of appeal as plenary as is constitutionally permissible. The objective, as stated in *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975), is

"to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit."

*See also, United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977).

■ Proceeding from these foundational propositions to the circumstances of the case at bar, we regard as definitive the point established in *United States v. Wilson, supra,* and reaffirmed in *United States v. Martin Linen Supply Co., supra,* that, in the words of *Martin Linen Supply Co.,* at 570, 571, 97 S.Ct. at 1354, "the double jeopardy bar to appealability is *automatically averted* . . ." (emphasis added) where neither a second trial nor

"at least, 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged . . .' "

will be "necessitate[d]" by a "successful governmental appeal reversing the . . . [judgment] of acquittal." Thus, as held in *United States v. Wilson, supra,* the existence of a jury verdict of guilty automatically averts a bar to appealability by the government arising from the constitutional protection against double jeopardy because, adverting to the characterization in *Martin Linen Supply Co., supra,* at 570, 97 S.Ct. at 1354 of the critical facet of the *Wilson* holding:

"restoration of the guilty verdict, and not a new trial, would necessarily result if the Government prevailed." *Id.,* at 570, 97 S.Ct. at 1354.

In our view *Wilson* is not distinguishable because, there, the government's appeal was from a post-verdict dismissal of an indictment whereas, here, the State's appeal is from a post-verdict entry of a judgment of acquittal for insufficient evidence to warrant conviction. We so conclude notwithstanding the double jeopardy consequences assigned to such a judgment of acquittal by *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) in which there was a federal prosecution, as further held binding on the states in *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *cf. also Hudson v. State of Louisiana,* —— U.S. ——, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). In none of these cases was there a jury verdict of guilty that could be restored, thereby to avoid the necessity of a second trial should the government prevail on appeal.

■ Moreover, the fact *alone* that a criminal defendant has been acquitted for insufficiency of evidence does not *suffice* to make the protection against double jeopardy operative, thereby to bar the State's appeal under 15 M.R.S.A. § 2115–A(2).

This proposition was expressly stated in dictum in *United States v. Jenkins*, 420 U.S. 358, 365, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250 (1975), as follows:

"When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal. *United States v. Wilson, ante,* at 344–345, 352–353 [95 S.Ct. at 1022–1023, 1026–1027]. When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict."

The message was also conveyed most cogently, even if indirectly, in *Martin Linen Supply Co., supra.* Justice Stevens there wrote a concurring opinion taking the position that the fact alone that the defendant in a criminal case was acquitted bars an appeal by the government from the judgment of acquittal. No other justice, however, agreed with that position. Further, the analysis of the majority opinion treated as determinative the point that *over and above* the fact of acquittal for insufficiency of evidence, *the jury had failed to agree on a verdict*; hence, no jury verdict finding defendant guilty existed to be restored, thereby automatically to avert the bar of double jeopardy arising from the necessity of a new trial in the event the government should prevail on appeal. *See also United States v. Blasco,* 581 F.2d 681 (7th Cir. 1978); *United States v. Clemones,* 577 F.2d 1247 (5th Cir. 1978); *United States v. Dreitzler,* 577 F.2d 539 (9th Cir. 1978).

In light of the critical *substantive* importance thus attributed to the existence of a jury verdict of guilty—that it automatically averts a double jeopardy bar to a governmental appeal *even* from a judgment of acquittal—we must reject defendant's "relation back" approach to the "reservation" of decision provision of Rule 29 M.R.Crim.P. We think it categorically unacceptable to attach a "relation back" fiction to a procedural authorization calculated primarily, as explained in *Martin Linen Supply Co., supra,* 430 U.S. at 574, 97 S.Ct. at 1356,

"to afford a trial judge the maximum opportunity to consider with care a pending acquittal motion."

In this regard we see no sound reason for pretending to return to a time in the past and ignoring the reality of the actual existence of a jury verdict of guilty that can be restored should the State's appeal be successful. We simply refuse to impose the limitation upon the legislatively contemplated plenary scope of the State's right of appeal that would arise from so artificial a technique of permitting double jeopardy to come into play to bar the State's appeal. In short, we agree fully with the pungent comment of the Supreme Court of the United States in *United States v. Jenkins, supra,* 420 U.S. at 365, 95 S.Ct. at 1011:

"To be sure, the defendant would prefer that the Government not be permitted to appeal or that the judgment of conviction not be entered, but this interest of the defendant is not one that the Double Jeopardy Clause was designed to protect."

■ We decide that in the circumstances of this case the State has a right of appeal, under 15 M.R.S.A. § 2115–A(2), from the judgment of acquittal entered in the Superior Court.

*2.*

■ We turn to the State's contention that the presiding justice was wrong in concluding that the evidence was insufficient to support defendant's conviction. The test of such legal insufficiency is whether on the evidence as a whole, assessed most favorably to the State, a jury acting rationally could not avoid having a reasonable doubt as to defendant's guilt. We agree with the presiding justice that the evidence in this case was insufficient to

foreclose the existence of a reasonable doubt that defendant had been an accomplice to arson.

█ To convict the defendant of arson on the rationale of accomplice accountability the State was required to prove beyond a reasonable doubt that the crime of arson was committed by someone and that the defendant,

"[w]ith the intent of promoting or facilitating the commission of the crime, ... aid[ed] or agree[d] to aid or attempt[ed] to aid such other person in planning or committing the crime." 17–A M.R.S.A. § 57(3)(A)

█ The only evidence that the fire at the Gramling property resulted from arson was the testimony of John Stevens, an investigator for the State Fire Marshall's office. He stated as his opinion that the fire was a "human element fire." He reached his opinion by applying the process of elimination to the evidence generated by his investigation of the fire site and by his conversations with Mr. Gramling concerning the presence or absence of fire-causing agents in the barn. Mr. Stevens first visited the scene of the fire fourteen months after it occurred. He described the area as completely burned out and overgrown, and he admitted that he was unable to determine the location of the fire's origin. By process of elimination he indulged the *assumption* that the fire started in the barn. This assumption, however, was contradicted by Ernest Mitchell, a neighbor of Mr. Gramling and apparently the first witness to reach the scene of the fire, who gave uncontroverted testimony that the fire started in the house. Mr. Stevens' testimony reveals no knowledge of the contents of the house. Moreover, on cross-examination, Mr. Stevens acknowledged that no investigation had been made regarding several incendiary materials that were present in the barn. In addition, despite his conclusion that the fire was a "human element fire",[6] Mr. Stevens acknowledged that he

could not say whether the fire was caused by a human being "with the intent to damage or destroy property", or

"in conscious disregard of a substantial risk that his conduct will endanger any person or damage or destroy the property of another",

as required by 17–A M.R.S.A. § 802, rather than otherwise, as for example, by accident.

The evidence summarized above is insufficient as a matter of law to prove beyond a reasonable doubt that the crime of arson had been committed. The only evidence of arson was the conclusion presented by Mr. Stevens. The conclusion was generated by one method of analysis, the process of elimination, and, as applied here, that method must be deemed legally deficient in consequence of the investigator's inability to locate the fire's origin and his failure to consider all possible causes. Moreover, the principal source of the evidence on which the investigator's conclusions were based was an examination of the fire site over a year after the fire occurred.

█ Even if we assume that the evidence on the issue of arson was sufficient, the record contains *no* evidence to show that defendant participated in any way in the crime. There was evidence to support a jury finding that defendant was with several friends in a car at the scene of the crime and that he was apparently the driver of the car when it left the scene of the fire. However, evidence showing a defendant's mere presence at the scene of a crime is inadequate to prove him an accomplice in the commission of the crime. *State v. Gervais*, Me., 394 A.2d 1183 (1978).

The only other evidence offered by the State on the issue of defendant's alleged involvement with the fire was the testimony of Mr. Stevens concerning an interview he and Police Officer Hunt conducted with defendant on June 15, 1978, almost fourteen months after the fire. The defendant was advised of his *Miranda* rights and the con-

---

6. Mr. Stevens explained what he understood the term "human element fire" to mean: "a person or persons had to have been responsible

for that fire or there was no other way for a fire to have started except somebody being responsible."

versation with Mr. Stevens and Officer Hunt was recorded on tape. Testifying as to his memory of that conversation, Mr. Stevens said that defendant had told him that he [defendant] knew at the time he arrived at the Gramling property that several of his companions intended to set fire to the buildings. However, when Mr. Stevens was shown the accurate transcription of the recorded tape and was asked to locate in the transcript the statements of defendant he had described from memory, Mr. Stevens could point to no such statements in the transcript. Defendant, a mentally handicapped young adult, testified in his own behalf. He stated that he knew of no plans to set fire to the Gramling property either at the time he arrived at the scene or at the time he picked up his companions as he was leaving the fire scene.

Thus, the record contains no evidence capable of being proof beyond a reasonable doubt that defendant solicited, aided, agreed to aid or attempted to aid in the commission of arson with the "intent of promoting or facilitating the commission of the crime." 17-A M.R.S.A. § 57(3)(A). The presiding justice acted correctly in directing that defendant be acquitted.

The entry shall be:

State's appeal denied; the judgment of acquittal is affirmed.

McKUSICK, C. J., and GODFREY, NICHOLS and CARTER, JJ., concurring.

ROBERTS, J. dissenting in separate opinion.

ROBERTS, Justice, dissenting.

While I agree with the majority view on the merits in this case as expressed in Part II of the Court's opinion, I would reach neither the merits of the State's appeal, nor the constitutional issues discussed in Part I. I would dismiss the appeal for lack of jurisdiction.

The majority identify the jurisdictional issue as follows:

The precise issue is whether the State's appeal from a judgment of acquittal, entered upon the order of the presiding justice after, and notwithstanding, return of a jury verdict of guilt, on the ground that the evidence was inadequate in law to sustain a conviction, would be consistent with the protection against double jeopardy afforded by the Fifth Amendment to the Constitution of the United States and by Article I, § 8 of the Constitution of Maine.

Majority op. at 422 (footnotes omitted). To reach these constitutional issues the majority first determines that the legislative purpose in enacting 15 M.R.S.A. § 2115-A(2) was "to make the State's right of appeal as plenary as is constitutionally permissible." Majority op. at 423. This legislative purpose is declared to be the same as that of the United States Congress in enacting a totally different statute, 18 U.S.C.A. § 3731,[1] and is said to be supported by the "liberal construction" mandate of section 2115-A(6). *Id.* I reject the majority interpretation of section 2115-A(2) because I find nothing in the legislative history to suggest a purpose "to remove all statutory barriers" and "to allow appeals whenever the constitution would permit." *Id.* quoting *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975).

Our legislature originally granted the State very limited rights of appeal in criminal prosecutions. P.L.1969, ch. 547. As first enacted, section 2115-A provided in subsection (1) a limited right of appeal *prior to trial* "from a decision, order or judgment of the court suppressing evidence . . ., allowing a motion to dismiss an indictment, complaint or information, quashing an arrest or search warrant or suppressing a confession or admission." P.L.1971, ch. 215 added to the above quotation "or ruling against the State in any pretrial order." In the original version of section 2115-A(2)

1. In pertinent part, 18 U.S.C.A. § 3731 (Supp. 1981) permits appeal by the government "from a decision, judgment, or order of a district court dismissing an indictment or information

. . . except . . . where the double jeopardy clause of the United States Constitution prohibits further prosecution."

appeals *after trial* were limited to *cross appeals.*

The original legislation was repealed and replaced by P.L.1979, ch. 243. The new section 2115–A(1) provided for an expanded right of appeal prior to trial while subsection (2) provided as follows:

2. **Appeals after trial.** An appeal may be taken by the State from the Superior Court or the District Court to the law court after trial and after a finding of guilty by a jury or the court from the granting of a motion for a new trial, from arrest of judgment, from dismissal or from other orders requiring a new trial or resulting in termination of the prosecution in favor of the accused, when an appeal of the order would be permitted by the double jeopardy provisions of the Constitution of the United States and the Constitution of Maine.

Subsection (6) stated:

6. **Liberal construction.** The provisions of this section shall be liberally construed to effectuate its purpose, or purposes, of insuring that the State is able to proceed to trial with all the evidence it is legally entitled to introduce, in view of the limited ability of the State to have error reviewed after trial.

The statement of fact which accompanied this legislation declared that the act "delineates the *pretrial* rulings and orders which may be appealed by the State and clarifies the timing and nature of *cross-appeals* by the State in criminal cases." L.D. No. 1375, 109th Leg., 1st Sess. (1979) (emphasis added).

I am persuaded that the original legislative purpose was quite modest. The broad language in subsection (2) granting the State a right of appeal "from other orders requiring a new trial or resulting in termination of the prosecution in favor of the accused" must be interpreted as being limited, as were the immediately preceding categories, to dispositions involving an adjudication of issues other than the sufficiency of the evidence. I find that limited interpretation particularly persuasive in light of the fact that neither this Court nor the United States Supreme Court has ever found consistent with double jeopardy protection *any procedure* permitting conviction after the trial court has entered a judgment of acquittal *based on an evaluation of the evidence relating to guilt or innocence.*

Against such persuasive indications of a narrow meaning of subsection (2) there is only the action of the legislature in 1980 in amending subsection (6) as follows:

6. *Liberal construction.* The provisions of this section shall be liberally construed to effectuate its ~~purpose, or~~ purposes~~, of insuring that the State is able to proceed to trial with all the evidence it is legally entitled to introduce, in view of the limited ability of the State to have error reviewed after trial~~.

This change originated, without explanation or debate, as part of Committee Amendment "A" to L.D.1925 in the second regular session of the 109th Legislature. L.D.1925 was an omnibus bill proposed by the Criminal Law Advisory Commission; its major component was a complete revision of the statutes dealing with post-conviction review (formerly post-conviction habeas corpus). There are no references in either the statement of facts or the Commission notes to an expansion of the State's right of appeal.

Given the fact that original subsection (6) (enacted by P.L.1979, ch. 243) described the legislative purpose even more narrowly than the explicit language of section 2115–A, I would view the 1980 amendment as merely eliminating the inconsistency rather than as an expansion "to make the State's right of appeal as plenary as is constitutionally permissible." I would wait until the legislature manifests unmistakably such an intent before I would define the parameters mandated by the Fifth Amendment to the United States Constitution or by Article I, Section 8 of the Constitution of Maine. Since I find that existing legislation does not authorize the State's appeal, I would dismiss it.