STATE of Maine

v.

George S. BOUCHLES.

Supreme Judicial Court of Maine.

Argued Sept. 7, 1982.

Decided March 8, 1983.

Janet T. Mills, Dist. Atty., Geoffrey Rushlau, Asst. Dist. Atty. (orally), Auburn, for plaintiff.

Petruccelli, Cohen, Erler & Cox, George F. Petruccelli (orally), Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

McKUSICK, Chief Justice.

Defendant George Bouchles was charged by indictment with trafficking in a Schedule W drug (cocaine), 17–A M.R.S.A. § 1103 (Pamph.1982). In its interlocutory appeal pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1982–1983), the State asserts that the Superior Court (Androscoggin County) erred in suppressing evidence seized by police officers during a warrantless search of defendant's van. The evidence suppressed was the contents of several plastic bags found in a box under the front seat of the van.[1] The Superior Court's order, entered on March 10, 1982, was premised on its conclusions that the search was "designed to locate . . . cocaine which the [police] had probable cause to believe was inside the van," and that as a result "the State's characterization of the search as an inventory was pretextual." On its appeal, the State contests that finding and also argues that, regardless of the validity of the search as an inventory, the search nevertheless falls within the "automobile exception" to the warrant requirement of the fourth amendment as recently delineated by the United States Supreme Court in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

We reverse the suppression order on the authority of *Ross*, which was decided on June 1, 1982, subsequent to the Superior Court's entry of its suppression order. We reject defendant's argument that article I, section 5 of the Maine Constitution, our state counterpart to the fourth amendment, demands on the present facts the application of any higher standard than that laid down for the United States Constitution by *Ross*. In view of our decision, we have no occasion to decide whether the suppression justice erred in characterizing the "inventory search" as pretextual.

Kenneth MacMaster, an undercover agent for the Maine State Police Division of Special Investigation, sought to arrange to buy a large quantity of cocaine from one Garth Murray. On the evening of September 11, 1980, MacMaster met with Murray in a restaurant parking lot in Auburn. Some time later, defendant George Bouchles drove his van into the parking lot. Murray stated, "This is it," or words to that effect. Murray then met one Kenneth Sprague between the van and MacMaster's car, and then both men returned to the car, where Sprague passed to MacMaster a one-ounce bag of what appeared to be cocaine. Murray said that the rest was in the van. At that point, MacMaster told other officers, who had been nearby observing, to arrest the van's driver. Bouchles was arrested and the van was taken to the Auburn Police Department where several officers, including MacMaster, immediately searched it without a warrant. Under the front seat in a closed box, they found the plastic bags, apparently containing cocaine, that are the subject of the Superior Court's suppression order and of this appeal.

I.

■ By principles of federal constitutional law as most recently expounded by the United States Supreme Court in *Ross*, the search of the closed box under the front seat of the Bouchles van was not violative of the fourth amendment.

■ Under the long-established automobile exception to the warrant requirement of the fourth amendment, a search of a vehicle is permitted without a warrant *if* the searching officers have probable cause to believe that it contains contraband *and* exigent circumstances exist preventing the officers from getting a warrant in time.

---

1. The Superior Court's finding is ambiguous, as is the evidence, whether the box was closed so that its contents could not be determined until it was opened. For the purpose of this decision, we make an assumption most favorable to defendant Bouchles, namely, that the box was a closed container comparable, for the purpose of fourth amendment analysis, to the rolled up, opaque plastic bag involved in *State v. Blais,* 416 A.2d 1253 (Me.1980).

The search can be either on the road, *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), or, as here, at a secure location to which the vehicle is moved after seizure, *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The warrantless search of the Bouchles van was undoubtedly valid under the automobile exception. As the suppression justice found, MacMaster and the other officers had probable cause to believe that the van contained cocaine. Thereupon, the officers could constitutionally make an immediate search of the van without first obtaining a warrant. The fact that they elected to move the van to a secure location before searching it does not cut off their right to carry through with a warrantless search. *Id.;* 2 W. LaFave, *Search and Seizure* § 7.2, at 512–19 (1978). The only question then becomes whether their warrantless search of the Bouchles van could validly extend to the closed box found under the front seat.

■ On the basis of our reading of earlier pronouncements of the United States Supreme Court, *see, e.g., Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), we had understood, prior to the *Ross* decision of June 1, 1982, that a warrantless search under the automobile exception could not go beyond seizure of a closed container found in the vehicle; that "the police . . . must await the issuance of a warrant before opening" the closed container. *State v. Hassapelis,* 404 A.2d 232, 237 (Me.1979) (zippered gym bag); *see also State v. Patten,* 436 A.2d 387 (Me.1981) (closed brown paper bag), *vacated,* 457 U.S. 1114, 102 S.Ct. 2919, 73 L.Ed.2d 1325 (1982), *on remand,* 457 A.2d 806 (Me.1983) (suppression order reversed); *State v. Blais,* 416 A.2d 1253 (Me.1980) (rolled up, opaque plastic bag). That, we now know, is not so. In its decision, the United States Supreme Court in *United States v. Ross,* 456 U.S. at 825, 102 S.Ct. at 2172, 72 L.Ed.2d at 594, declared that under the fourth amendment

the scope of the warrantless search authorized by [the automobile exception recognized in *Carroll,*] is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

The Court further explained its *Ross* holding, as follows:

[T]he decision in *Carroll* was based on the Court's appraisal of practical considerations viewed in the perspective of history. It is therefore significant that the practical consequences of the *Carroll* decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. . . . The Court in *Carroll* held that "contraband goods *concealed* and illegally transported in an automobile or other vehicle may be searched for without a warrant." 267 U.S., at 153, 45 S.Ct. 280 [at 285], 69 L.Ed. 543 (emphasis added). As we noted in *Henry v. United States,* 361 U.S. 98, 104, 80 S.Ct. 168 [172], 4 L.Ed.2d 134, the decision in *Carroll* "merely relaxed the requirements for a warrant on grounds of impracticability." It neither broadened nor limited the scope of a lawful search based on probable cause.

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. . . . When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Ross,* 456 U.S. at ——, 102 S.Ct. at 2170, 72 L.Ed.2d at 590–91. In *Ross,* the concurring

justices emphasized that it is "important ... not only for the Court as an institution, but also for law enforcement officials and defendants, that the applicable legal rules be clearly established," 456 U.S. at 825, 102 S.Ct. at 2173, 72 L.Ed.2d at 594 (Blackmun, J.), and that "it is essential to have a Court opinion in *automobile* search cases that provides 'specific guidance to police and courts in this reoccurring situation'," 456 U.S. at 826, 102 S.Ct. at 2173, 72 L.Ed.2d at 595 (Powell, J.) (emphasis in original). Thus, as a matter of federal constitutional law, *Ross* establishes a bright-line rule that permits a warrantless search of an automobile under the *Carroll* exception to extend to any containers, found within the vehicle, that could be the hiding place of the suspected contraband.

█ In the case at bar, the police clearly had probable cause to search the Bouchles van for drugs, and they furthermore were faced with exigent circumstances that did not permit them time to obtain a search warrant. By the new enlightenment provided in *Ross* by the ultimate arbiter of federal constitutional law, the police did not violate the fourth amendment by pushing their search of the van into the closed box within the van.[2]

█ Defendant argues that *Ross* should not be applied in this case because the search in question occurred before *Ross* was decided. This argument finds little support in the case law. It is well settled that

modifications of search and seizure rules that narrow defendants' rights are applied to pending cases. *See, e.g., Taylor v. Arizona,* 471 F.2d 848 (9th Cir.1972). Such retroactive application "does not in any meaningful way conflict with the deterrence objective of the Fourth Amendment exclusionary rule." 3 W. LaFave, *Search and Seizure* § 11.5, at 699 (1978). Moreover, as the *Ross* court stated, "[a]ny interest in maintaining the status quo that might be asserted by persons who may have structured their business of distributing narcotics ... on the basis of judicial precedent clearly would not be legitimate." 456 U.S. at 824 n. 33, 102 S.Ct. at 2172 n. 33, 72 L.Ed.2d at 593 n. 33. We have no doubt that the Supreme Court would reject defendant's argument.

### II.

█ As an alternative to his federal constitutional claim, defendant asserts that the warrantless search of the closed box violated his rights under article I, section 5 of the Maine Constitution.[3] We conclude, however, that the police action in searching the box did not violate our State Constitution.[4] In construing article I, section 5 of the Maine Constitution in the specific context of the present case, we write on a clean slate. In this task we reject any straitjacket approach by which we would automatically adopt the federal construction of the fourth amendment ban of "unreasonable searches and seizures" as the meaning of

---

**2.** The search was valid as an automobile search even if the officers believed they were conducting an inventory. *See State v. Cress,* 344 A.2d 57 (Me.1975).

**3.** Article I, section 5 of the Maine Constitution provides:
>  The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.

The fourth amendment to the United States Constitution reads as follows:

>  The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**4.** Solely for the purpose of our present analysis, we can assume, without deciding, that if the search of the closed box violated the Maine Constitution, this court would apply a state exclusionary rule as a sanction for that illegal action. *But see State v. Fredette,* 411 A.2d 65, 67 (Me.1979).

the nearly identical provision of the Maine Constitution. On the other hand, the absence of Maine authority on the issue forces us to seek guidance from the precedents of other jurisdictions, including the federal, construing their similar constitutional search-and-seizure clauses. *Cf. State v. Howes,* 432 A.2d 419, 423 (Me.1981) (double jeopardy clause). Furthermore, we cannot be blind to the immense body of fourth amendment precedent in both state and federal courts. Nor can we ignore the experience of the Supreme Court that culminated in its *Ross* decision, groping for a rule that would give law enforcement officers and courts clear guidance and at the same time preserve the limits imposed by history upon the *Carroll* exception for automobile searches. This court has had its own share of difficulty in following the doctrinal meanderings of the federal "closed container exception" to the *Carroll* rule. While we acknowledge a duty to declare independently the meaning of the search-and-seizure clause of the Maine Constitution, we should not plunge down doctrinal trails in disregard of the lessons of the federal experience. We conclude that, in a situation where, under both the federal and Maine Constitutions, the police are permitted to search an automobile without a warrant—because of the coincident existence of probable cause and exigent circumstances—they may press their search into a container that reasonably might hold the sought-after contraband.

The entry must be:

Appeal of the State sustained.

Pretrial order suppressing contents of the plastic bags seized in the automobile search reversed.

GODFREY, NICHOLS, ROBERTS and WATHEN, JJ., concurring.

CARTER, Justice, dissenting.

I dissent on the same rationale that I have expressed today in my dissent in *State v. Patten,* 457 A.2d 806 (Me.1983). Specifically, there is no showing here of any exigent circumstance justifying the avoidance of the delay associated with obtaining a search warrant and, thus, permitting application of the so-called "automobile exception" to the warrant requirement. The question presented by this case is not whether the search here was within the scope of a search legitimately conducted under the "automobile exception" to the warrant requirement. *Cf. Katz v. United States,* 389 U.S. 347, 349–50, 88 S.Ct. 507, 509–10, 19 L.Ed.2d 576, 580–81 (1967). Rather, the issue is whether, in the time, place, and circumstances of the search actually conducted, *any* warrantless search of the van was legitimate under that exception.

Here, I suggest, there is even less basis for a finding of the existence of the requisite exigency than is present in *Patten II.* If anything, the record here makes a positive showing of the absence of any such exigency. The record establishes, without dispute, that the defendant was ordered out of the van, the van was locked at that time, the defendant and the other occupant, Sprague, were arrested, and the possession and control of the locked van was secured by the police officers. The defendant and Sprague were then removed from the scene in the custody of the officers and secured in jail. The locked van was *impounded* and removed *to the police station* on the premise that there was probable cause to believe the van had been used to transport contraband. It quite escapes me how, in such combination of circumstances, there could be even the most remote danger that the defendant or Sprague or anyone else could secure access to the van to destroy evidence or to take possession of weapons contained within the van.

The basic tension in the constitutional theory of vehicular searches is between the constitutionally mandated preference for a warrant in the case of any search and the fleeting character of the opportunity to search that is occasioned by the easily mobile character of a vehicle. A realistic compromise resolution of this tension is intend-

ed to be achieved by the use of the "automobile exception" to the warrant requirement. Where probable cause to search a vehicle exists and the State shows that the mobility of the vehicle creates a substantial peril that the opportunity to search the vehicle will be lost by the delay required to obtain issuance of a search warrant by a magistrate, an "exigent circumstance" exists that justifies the warrantless search of the vehicle. Those two factual elements, (1) the existence of probable cause to search the vehicle and (2) an exigent circumstance, coalesce to relieve the constitutional tension by dispensing with the preference for the warrant.

The majority erroneously interprets *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) to permit a warrantless search of the vehicle after the exigency that authorizes the search has disappeared.[1] 457 A.2d at 799–800. *Chambers* does not support that rationale. Further, the majority's premise will not stand close scrutiny in principle precisely because that premise allows the applicability of the automobile exception to survive the reason for its application, in derogation of the constitutionally mandated preference for magisterial determinations of probable cause. *Chambers,* 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428. When, as here, the police themselves have, by their own acts, removed the exigent circumstance, there is no basis whatever on which to dispense with the warrant requirement.

The exigent circumstance must exist when the search is actually conducted. In *Chambers,* a true exigency existed at the time of the actual search. That fact is somewhat obscured by the sparse factual statement provided by the Court's opinion. Its existence is not sufficiently subtle, however, to escape careful and objective analysis. Close examination of the facts and the Court's careful language in *Chambers* display that the case was decided on the basis that an exigency did, in fact, exist on the record there before the Court when the search was carried out at the station house.

In *Chambers,* the vehicle in question was "seized" incident to the arrest. *Chambers,* 399 U.S. at 47, 90 S.Ct. at 1979, 26 L.Ed.2d at 426. The court found that there was probable cause for the arrest and, co-existing with it, probable cause "to search the car for guns and stolen money." *Chambers,* 399 U.S. at 47–48, 90 S.Ct. at 1979, 26 L.Ed.2d at 426. The vehicle could have been searched without a warrant "on the spot," that is, contemporaneously with the arrest. *Chambers,* 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428–29. The issue presented was whether the officers' right to search the car without a warrant continued to exist for a reasonable period during which the car was removed from the scene of the arrest to the police station and promptly searched.

The court held that such a search could not be justified as a search "incident to

---

1. The impoundment of the van also distinguishes this case from *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), in which the seized vehicle was removed to a garage seven miles away from the police station. 413 U.S. at 436, 93 S.Ct. at 2525, 37 L.Ed.2d at 712. This case is also distinguishable from *Cady* because the police officers in *Cady* "did not have actual, physical custody of the vehicle...." 413 U.S. at 446, 93 S.Ct. at 2530, 37 L.Ed.2d at 717–18, and the vehicle was simply removed "like an obviously abandoned vehicle, [as] it represented a nuisance." 413 U.S. at 447, 93 S.Ct. at 2531, 37 L.Ed.2d at 718.

Thus, the police in *Cady,* in contradistinction to the police in this case, had neither an exclusive right to possession of the vehicle nor the power to control access to it. The presence of that right and power make a critical difference, in my opinion, in the result of the analysis of the entire question of the existence of an exigency sufficient to justify dispensing with the requirement of a warrant. When the police do not have effective control over, and access to, the vehicle, an exigency may well exist permitting the search to protect the general public from the danger of, for example, an intruder removing a revolver from the trunk of the vehicle, as in *Cady.* When, however, the police have lawful possession of the vehicle by impoundment, and they have legal and actual control of access to the vehicle, it is impossible to say that they are under any exigent pressure to avoid the delay of obtaining a warrant before conducting a search.

arrest" because "the reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house." *Chambers*, 399 U.S. at 47, 90 S.Ct. at 1979, 26 L.Ed.2d at 426. However, the Court said that the search might also be legitimated in certain circumstances by the application of the "automobile exception" to the warrant requirement. *Chambers*, 399 U.S. at 47–51, 90 S.Ct. at 1979–81, 26 L.Ed.2d at 426–28.

Noting that in *Dyke v. Taylor Implement Manufacturing Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the Court did not reach the question of whether warrantless automobile searches were valid when the vehicle had been removed from the highway to be "parked outside a courthouse," *Chambers*, 399 U.S. at 50, 90 S.Ct. at 1980, 26 L.Ed.2d at 427–28, the Court stated that *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and its progeny do not "require or suggest that in every conceivable circumstance the search of an auto *even with probable cause* may be made without the extra protection for privacy that a warrant affords." *Chambers*, 399 U.S. at 50, 90 S.Ct. at 1980–81, 26 L.Ed.2d at 428 (emphasis added). Thus, the issue to be resolved was the determination of the quality of those circumstances that would legitimate such a search. Noting the particular search problems created by the mobility of the automobile *per se* and the constitutional preference for a determination of probable cause by "a magistrate," the Court determined the qualitative test of the legitimating circumstances was that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." *Chambers*, 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428.

The *Chambers* Court stated the holding of *Carroll* to be that "a search warrant [is] unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence, an immediate search is constitutionally permissible." *Chambers*, 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428. The care with which that language bases the legitimate warrantless search on the existence of an exigency posing the peril of loss of the evidence concerning probable cause is compellingly patent and cannot, in reason, be ignored.

The Court in *Chambers* clearly thought an exigency creating a real peril of loss of the opportunity to search existed at the scene of the arrest because the vehicle "was a fleeting target for a search." *Chambers*, 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428–29. All that the Court there held was that the existence of that exigency was not dissipated by the removal of the vehicle from a darkened parking lot to the police station for the safety and convenience of the officers in conducting a prompt search. That removal did not dissipate, without more, the existence of the exigency; "[t]he probable-cause factor still obtained at the station house and so did the mobility of the car. . . ." *Chambers*, 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 429. The Court did not find "unreasonable" [2] the change of location of the car for the safety and convenience of the officers.

The Court clearly recognized that in accomplishing the removal of the vehicle to the station house, the officers exercised only a raw, *possessory* power to relocate the vehicle to a position in which an immediate exercise of their existing right to search the vehicle could be safely and effectively carried out. The vehicle was never im-

---

2. The Court stated:

It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and safety of his car to have the vehicle and the keys together at the station house.

*Chambers*, 399 U.S. at 52 n. 10, 90 S.Ct. at 1981 n. 10, 26 L.Ed.2d at 429 n. 10.

pounded in *Chambers.* The officers had, therefore, throughout the period in question, nothing more than a temporary possession of the vehicle and had no authority to deny its surrender on demand to any person who had a *legal* right to its possession, use, or ownership. The mobility of the vehicle, coupled with the tenuous character of the officers' possession of it, continued the exigency that existed at the scene and at the time of the arrest. *Chambers,* therefore, stands for the proposition that when the existence of probable cause and exigent circumstances authorizes a search of a vehicle, a reasonable relocation of the vehicle, in order that the search may be promptly, safely, and effectively carried out, does not vitiate the existing right to search as long as both probable cause and exigent circumstances continue to exist at the time the search is actually conducted at the new location.

The present case is far removed from one in which the *Chambers* rule is properly applicable to justify a warrantless vehicle search. The police here had lawfully impounded the van in question and were thereby clothed with the legal authority to deny any person's claim to possession or use of the van for a time sufficient to permit the issuance of a search warrant. Even if the requisite exigency existed when Bouchles and Sprague were arrested, it was dissipated completely with the impoundment of the van and the maintenance by the police of close, exclusive, and lawful

possession of the van. On the demise of the exigent circumstance, there was reborn from its ashes the constitutionally mandated preference for a probable cause determination by a neutral and detached magistrate.

I see no reason why we should not conclude that this search was *per se* unreasonable because it was conducted without a warrant[3] and because the State has failed to overcome the status of an unreasonable search by proof of any "exigent circumstance" justifying the application of the "automobile exception" to the warrant requirement.[4] Policemen "engaged in the often competitive enterprise of ferreting out crime" are poorly equipped to perform the function of "a neutral and detached magistrate." *Shadwick v. City of Tampa,* 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783, 788 (1972). A magistrate's service to the interests of constitutional principle should be delegated to the police only when there exists some compelling exigency that justifies, in reason and in practice, the delegation. *See United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572, 592 (1982) (Marshall and Brennan, JJ., dissenting).

I would affirm the suppression of the evidence seized from the van. In the absence of any exigency justifying the application of the automobile exception, the search was invalid because it was conducted without a warrant.[5]

---

**3.** *Katz v. United States,* 389 U.S. at 357, 88 S.Ct. at 514, 19 L.Ed.2d at 585; *Stoner v. California,* 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856, 859 (1964); *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514, 1519 (1958); *Niro v. United States,* 388 F.2d 535, 540 (1st Cir.1968); *State v. Dunlap,* 395 A.2d 821, 824–25 (Me.1978); cf. *Colorado v. Bannister,* 449 U.S. 1, 2–4, 101 S.Ct. 42, 42–44, 66 L.Ed.2d 1, 3–4 (1980) (per curiam).

**4.** *United States v. Jeffers,* 342 U.S. 48, 52, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); *Johnson v. United States,* 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440–41 (1948); *see State v. Walker,* 341 A.2d 700, 703 (Me.1975); cf. *State v. Cress,* 344 A.2d 57, 64 (Me.1975); *State v.*

*Stone,* 294 A.2d 683, 689 (Me.), *application for bail denied,* 409 U.S. 908, 93 S.Ct. 212, 34 L.Ed.2d 169 (1972); *State v. Chapman,* 250 A.2d 203, 208–10 (Me.1969).

**5.** The "inventory search" exception to the warrant requirement cannot save this search. *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000, 1009 (1976), carefully and explicitly limits the "inventory search" exception to the warrant requirement to circumstances involving non-pretextual, standard inventories, conducted solely to secure the contents of the vehicle inventoried against loss or harm. The Court specifically notes in its opinion that "there is no suggestion whatever that this standard procedure, essentially like that followed throughout

the country, was a pretext concealing an *investigatory* police motive." *Opperman,* 428 U.S. at 376, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009 (emphasis added).

In *Opperman,* the police had absolutely no reason to expect the car in question would contain any contraband, much less any probable cause to so believe. It was impounded and removed from its street location solely because it was illegally parked overnight. It was the absence of any *investigatory* "police motive" which there made possible the conclusion that the inventory was non-pretextual. It is impossible to find any United States Supreme Court case upholding a search of a motor vehicle as valid strictly on the basis of the inventory search exception in which, simultaneously with the alleged inventory search, the police officers possessed probable cause to believe that contraband or evidence of crime was to be found within the vehicle.

In the present case, the suppression justice found the inventory search pretextual because it was "clearly designed to locate the two ounces of cocaine which the agents had probable cause to believe was inside the van." Any claim of an inventory search at a time when those doing the searching have probable cause for the search on independent bases, but have not obtained a warrant, must be viewed as extremely suspect if not presumptively pretextual. Further, the evidence before the suppression justice clearly supported his finding of pretext and that finding should not be cavalierly overridden. We may overturn the factual predicates of that conclusion only if we find "clear error." *State v. Rand,* 430 A.2d 808, 821 (Me.1981); *State v. Dunlap,* 395 A.2d 821, 824 (Me.1978). The record here before the suppression justice will not support such a finding. *See Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981).