**STATE of Maine**

v.

**Steven C. WHITE.**

Supreme Judicial Court of Maine.

June 2, 1978.

---

Joseph M. Jabar (orally), Dist. Atty., Paul D. Mathews, Asst. Dist. Atty., Augusta, for plaintiff.

Mark S. Kierstead (orally), Waterville, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

By separate indictments dated April 6, 1976, defendant Steven White was charged in the Superior Court (Kennebec County) with breaking, entering and larceny in the nighttime at one building (17 M.R.S.A. § 2103) and attempted breaking, entering and larceny in the nighttime at another building (17 M.R.S.A. § 251).

Defendant filed a pre-trial motion to suppress as potential evidence against him a tire iron which the State Police had found in defendant's automobile and seized. After hearing, the presiding Justice denied the suppression motion, deeming *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) precedentially controlling as to the issues raised.

A consolidated trial by jury was held and the tire iron was admitted in evidence against defendant. Defendant was found guilty as charged in each indictment.

On appeal from the judgments of conviction defendant seeks reversal of the convictions, claiming that the admission in evidence of the tire iron was prejudicial error.

We find no error.

The testimony at the hearing on the motion to suppress established the following facts. During the evening of February 13, 1975, Trooper Phippen of the Maine State Police was investigating a break and an attempted break at two adjacent buildings in Vassalboro. Officer Phippen examined several pry marks on the doors and locks of one of the buildings from which a Titan 12 volt battery was reported missing. After a while, he left to drive to North Vassalboro. While he was driving, a vehicle approached his car and failed to dim its bright lights. Officer Phippen circled and observed the vehicle swerve and move erratically. The officer thereupon stopped the vehicle and arrested its operator, Robert Derosby, on a charge of reckless driving. Defendant was a passenger in the automobile and its owner. When he made an attempt to dispose of a liquor bottle, Officer Phippen arrested him for littering. A scuffle developed and Derosby managed to escape. During the scuffle Officer Phippen found it necessary to use mace to subdue defendant. Defendant was then handcuffed and arrested on the additional charge of assault on a police officer.

After Officer Phippen examined defendant's automobile, which was still located in the road, and determined that it was unsafe for operation he had it towed to a service station in Waterville. He then transported defendant to the Waterville Police Station. There, Officer Phippen noticed that defendant's boots appeared to match the tracks in the snow at the scene of the crimes Phippen had investigated in Vassalboro earlier that evening. He therefore seized defendant's boots.

Within an hour, Officer Phippen went to the service station in Waterville where defendant's automobile had been towed. Assisted by three fellow officers Officer Phippen undertook, as he characterized it, a "routine inventory search" of the contents of defendant's automobile. While thus engaged, the police saw a tire iron under the front seat of the automobile. On the tire iron were various marks matching the paint on the buildings involved in the break and attempted break in Vassalboro. Noticing these marks, the police seized the tire iron.

In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) the Supreme Court of the United States decided that when the police, pursuant to a standard practice, engage in activities which have the objective character of being inventorying or safekeeping undertakings, such activities do not violate the protections afforded by the 4th–14th Amendments to the Constitution of the United States. Defendant says that *Opperman* does not govern the case at bar because, according to defendant, there was no legitimate basis in the first instance for Officer Phippen to impound defendant's automobile, thereby to bring into play the need for any "inventorying" or "safekeeping" activity by the police.

We disagree.

The evidence warranted findings that there was need for Officer Phippen to remove defendant's automobile from the road. Defendant's automobile was "right in the road" and "wasn't safe to be on the road." [1] Because the presence on a public road of mechanically defective vehicles which cannot be safely operated creates dangers to the free movement of traffic and the public safety, the police have a general authority to remove such vehicles from the highway. See 29 M.R.S.A. § 1111; *State v. Bales,* 15 Wash.App. 834, 552 P.2d 688 (1976); *Altman v. State,* 335 So.2d 626 (Fla.App.1976). Further, in the particular circumstances here, involving a scuffle which enabled defendant's companion to escape from police custodial control and necessitated the use of mace and handcuffs to subdue the defendant, it was reasonable for Officer Phippen to deny defendant the opportunity to make alternative arrange-

1. According to Officer Phippen, the automobile had a faulty brake pedal, a dragging muffler and bare rear tires.

ments for the custody of his car.[2] Lastly, nothing in the evidence suggests that Officer Phippen had pretextually resorted to the impounding of the vehicle as a device to set up a basis for searching it without having probable cause for a search.

The remaining questions, then, in the evaluation of whether *Opperman* was correctly held controlling, are (1) was there a standard practice of inventorying and (2) were Phippen's activities, objectively viewed, "inventorying" procedures.

■ The evidence showed that it was the standard practice of Officer Phippen's unit of the State Police, as well as of Officer Phippen individually, to "inventory" the contents of impounded vehicles. Officer Phippen testified that he always conducted an inventory of the contents of an impounded vehicle by making a list of the contents and by taking and securing in police custody anything of significant value that might be stolen while the vehicle remained in police custody. Lieutenant Falconer, Troop Commander of Troop C of the Maine State Police (to which unit the officers here were assigned), testified that, although the inventory procedure was not a state-wide policy at that time, his unit of the State Police as a matter of standard procedure inventoried all impounded vehicles, at least where the owner could not make arrangements for the safekeeping of the vehicle or its con-

tents. Each officer was responsible for keeping a list of the contents of all vehicles that he inventoried. Valuable items were taken by the officer in charge and stored in police custody. The inventory procedure involved a thorough examination of the vehicle for all valuable items in the vehicle and under its seats as well as for valuables in the glove compartment and trunk of the vehicle. The Justice presiding at the suppression hearing thus had warrant to conclude that a standard procedure existed which could properly be characterized as a standard inventorying procedure within the meaning of *Opperman*.[3]

■ Further, the evidence reveals that Officer Phippen's particular activity was, objectively, an inventorying project. When the officers arrived at the service station to examine the contents of the impounded vehicle, they commenced to follow their standard "inventory" procedures.[4] Officer Phippen made a list of all the valuable items found in the vehicle. In this list were stated in detail the contents of the vehicle: a tool box full of tools, two gas cans, a television set, a chimney brush, a flashlight, a pair of gloves, a radio hooked up in the front seat and the tire iron. It was while this activity of conducting standard inventorying procedures was in process that the tire iron with the matching paint chips was discovered and seized.[5] These facts sup-

2. These facts distinguish the cases of *State v. Hardman*, 17 Wash.App. 910, 567 P.2d 238 (1977) and *State v. Travitz*, 140 Ga.App. 351, 231 S.E.2d 127 (1976) on which defendant relies.

3. The failure to use printed inventory forms or centralized reporting techniques does not preclude the characterization of the police enterprise as an inventory procedure. The practice of Officer Phippen and his unit served to minimize the possibility of an evidentiary vacuum or failure of memory which an officer might otherwise experience if confronted with an owner's claim of theft months after the impoundment of the vehicle. In addition, the type of inventory here employed would serve to protect the police and the custodian of the vehicle in the event that the vehicle contained potentially dangerous contents. Lastly, the practice of taking certain valuable items into special protective custody has the effect of

safeguarding the owner's property while it remains in police custody.

4. Phippen's prior seizure of defendant's boots at the police station on the suspicion that the footprints in the snow at the scene of the breaking and entering offense matched defendant's boots did not preclude Phippen from acting according to his standard practice of conducting an inventory of all lawfully impounded vehicles.

5. It is necessary to characterize Officer Phippen's conduct as an "inventorying" procedure only to the point at which he discovered the tire iron. After this discovery, there was probable cause for the officers to seize the tire iron as evidence of the crime and thereafter to proceed with an avowedly investigative search of the automobile to seek to find further evidence of the crime. See *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

ported the presiding Justice's determination that *Opperman* was controlling.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ., concurring.

DELAHANTY, J., did not sit.