## STATE of Maine

v.

## Richard HUDSON.

Supreme Judicial Court of Maine.

Aug. 14, 1978.

Joseph H. Field (orally), Asst. Dist. Atty., Bath, for plaintiff.

Bernotavicz & Kenyon, by John W. Bernotavicz (orally), Richmond, for defendant.

Before WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

WERNICK, Justice.

On July 5, 1977, defendant Richard Hudson was indicted in the Superior Court (Sagadahoc County) on two counts of burglary (17–A M.R.S.A. § 401) and two counts of theft by unauthorized taking (17–A M.R.S.A. § 353). He filed a pre-trial motion to suppress as potential evidence against him certain items of antique property which the Rhode Island State Police had seized from a pick-up truck operated by defendant in Rhode Island on December 24, 1976. The Justice who heard the motion to suppress denied it, the decision being based on the Justice's finding that the Rhode Island State Police had lawfully impounded the truck and "inventoried" its contents. The Justice also ruled that the police retention of the articles taken from the truck for several months before they were identified as stolen property was justified because neither defendant nor the owner of the truck had sought to have them returned.

At the trial, held before a jury, the presiding Justice admitted in evidence over defendant's objection the items of antique property seized from the pick-up truck operated by defendant. Found guilty of the four offenses charged in the indictment, defendant has appealed from the judgments of conviction, claiming that the admission of the antique items in evidence was reversible error because they had been seized in violation of the protections against unreasonable searches and seizures guaranteed to defendant by the 4th–14th Amendments to the Constitution of the United States.

We sustain the appeal.

The testimony relating to the motions to suppress established the following facts. During the morning of December 24, 1976, defendant was driving a pick-up truck in North Kingston, Rhode Island when Richard Hurst, a Rhode Island State Trooper, stopped the vehicle in the belief that it was travelling at an excessive rate of speed. Since Trooper Hurst had not clocked the speed of the vehicle, his original intent was to give only a verbal warning. He discovered, however, that defendant was unable to produce a driver's license and that neither defendant nor his two companions in the vehicle could produce satisfactory identification.[1] In addition, he ascertained that the vehicle was registered in Maine to a Robert Dall who was not an occupant of the vehicle. Although defendant claimed to have a valid Maine driver's license as well

[1]. Defendant produced only a check out stub in his name from a local hotel. One of defendant's companions produced a welfare card issued in the name of another person.

as the express permission of the owner to operate the vehicle, Trooper Hurst asked defendant and his companions to follow him in their vehicle to the police barracks where they might better ascertain whether defendant had a valid driver's license.

At the barracks, defendant and his two companions were asked to supply their names, addresses and dates of birth. Thereafter, they were placed in a police conference room. At about the same time, another officer at the barracks told Trooper Hurst that he recognized defendant's name. Upon checking their records, the officers discovered that a "Richard Hudson" was a suspect in a "Lewiston B & E ring."

After giving the *"Miranda"* warnings to defendant, Trooper Hurst asked him what he was doing in Rhode Island. Defendant replied that he was visiting a friend named "Celica." Since the Troopers believed that this person was involved in a Rhode Island "B & E ring", Hurst requested defendant to consent to a search of the vehicle. Defendant refused.[2]

Hurst then went outside and again looked at the vehicle. He observed that the back of the pick-up was enclosed by a cap with windows manufactured so that no one could see in from outside of the truck. One of the windows was "slightly open, maybe an inch." Hurst opened this window farther and saw some old furniture in the back of the truck. At this point, Hurst went inside the barracks and again asked defendant to consent to a search of the vehicle. Defendant again refused.

Defendant and his companions were "thoroughly searched", but no key to the back of the truck was found.[3] Hurst then returned to the vehicle, pryed open the back of the truck and, according to his testimony, he "inventoried" its contents.[4] In the process he came upon several items of antique furniture in the back of the truck which he removed from the truck and placed in the barracks.

Later that day, Trooper Hurst succeeded in reaching the owner of the vehicle, Dall, who told Hurst that defendant had authority to have the truck but that he (Dall) had no knowledge as to the contents of the truck. Hurst told Dall that he would have to come to Rhode Island to claim the truck since neither defendant nor his companions had a driver's license in their possession.

Thereafter, Hurst verified that defendant had a valid Maine driver's license. Between 5:00 p. m. and 7:00 p. m., defendant was issued a summons for driving in Rhode Island without a license in his possession and was released. The police retained control of the antiques because defendant and Dall disclaimed knowledge about the antiques or how they happened to be in the vehicle. Several months later the antiques were identified as stolen property.

The Justice's ruling on the pre-trial motion to suppress supported the lawfulness of the search of the vehicle as an "inventorying" procedure, notwithstanding that the Justice had expressly excluded evidence proffered by the State to show that the Rhode Island State Police had a standard practice, or policy, of conducting inventory searches in the circumstances here involved.[5]

In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976),

---

**2.** Defendant was told that he would have to remain at the barracks until the Trooper's checked with the FBI on his identification and until it was established whether he had a valid driver's license.

**3.** Hurst testified that defendant was thoroughly searched. Defendant explained that he and his companions were forced to take off all of their clothes in the course of the search.

**4.** When he was asked if there were any discussion of getting a search warrant, Hurst stated that he "thought of the idea" but that "it was the day before Christmas, and I just assumed that they [his superiors] figured it would be a tough time to get a warrant."

**5.** When the Justice presiding at the trial reaffirmed the prior ruling on the motion to suppress, no evidence had been presented to him as to any standard practice, or policy, of inventorying.

the Supreme Court of the United States decided that activities conducted by the police which have the objective character of being inventorying, or safekeeping, activities and which are undertaken pursuant to a standard practice of inventorying, or safekeeping, are consistent with the protections afforded by the 4th–14th Amendments to the Constitution of the United States. See also *State v. White,* Me., 387 A.2d 230 (1978). · In *Opperman* the Court explained that it had "carefully noted" in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) that the search there was "carried out in accordance with *standard procedures* in the local police department." (428 U.S. at 375, 96 S.Ct. at 3100.) The Court then further stated that this factor tends "to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function." (428 U.S. at 375, 96 S.Ct. at 3100.) The requirement of conformity to a standard practice, or policy, is essential; otherwise, an inventory procedure would be used on an ad hoc basis as a "pretext concealing an investigatory police motive." See *South Dakota v. Opperman,* 428 U.S. at 376, 96 S.Ct. at 3100.

In the case at bar, even if the search of the pick-up truck was undertaken as and conducted in a manner objectively capable of being deemed an "inventory" procedure, the Justice presiding at the pre-trial suppression hearing made no determination, and had no evidence before him, concerning the *additional prerequisite* of a valid inventory search: whether the Rhode Island State Police had a standard practice, or policy, of conducting inventory searches in the circumstances here involved. Because of these omissions defendant is correct in his contention that the record fails to provide a justifiable basis to hold the search here at issue a valid "inventory" search. Accordingly,· defendant's appeal must be sustained.

A development supervening during the pendency of this appeal also affects our ultimate disposition of this case. This Court authorized a Justice of the Superior Court to hold a hearing on a motion filed by defendant seeking a new trial on grounds of newly discovered evidence. ·That hearing has been completed, and the Superior Court Justice has officially notified this Court that upon a remand of the case to the Superior Court he would grant defendant a new trial. (Rule 33 M.R.Crim.P.).

That this has occurred does not cause the instant appeal to be moot. As our analysis has disclosed, we confront the special circumstance, here, that the Justice presiding at the suppression hearing excluded evidence proffered by the State to prove that the Rhode Island State Police had a standard practice of inventorying which was applicable to the circumstances here involved. Since our view is that the absence of such evidence is fatal to the constitutional validity of the search on an "inventory" basis, whereas the presence of the evidence would thus support its constitutionality, decision of this appeal will affect the course of the new trial which the Superior Court is about to order. The decision establishes that the existing ruling on defendant's motion to suppress cannot *automatically* be taken as "the law of the [new] trial", in accordance with the usually governing rule set forth in *State v. MacKenzie,* 161 Me. 123, 210 A.2d 24 (1965) and *State v. Hazelton,* Me., 330 A.2d 919 (1975). In a new trial should the State offer in evidence the antique items seized by the Rhode Island State Police and should defendant object to their admissibility, the ruling on defendant's pre-trial motion to suppress can be the "law of the [new] trial" only if the State, which we hold shall be granted the opportunity, presents evidence sufficient to prove to the presiding Justice that the Rhode Island State Police had a standard practice for inventorying vehicles applicable to the circumstances here involved and that the instant inventorying procedure was in fact undertaken pursuant to that standard practice.

The entry is:

Appeal sustained; case remanded to the Superior Court for further proceedings not inconsistent with this opinion.

McKUSICK, C. J., and POMEROY and GODFREY, JJ., did not sit.