MEMORANDUM AND ORDER
 

 JAMES R. MILLER, Jr., District Judge.
 

 Defendant Jackson has moved to suppress approximately $7,000.00 in cash that was
 
 *1042
 
 seized from a closed, opaque black paper bag. The bag was located in the locked trunk of a 1977 Cadillac limousine that Jackson had been driving shortly before his arrest on August 31, 1981. The parties have submitted extensive memoranda on this issue,
 
 [1]
 
 and the court held an evidentiary hearing on December 10,1981. The matters raised by Jackson’s motion are, therefore, ready for decision.
 

 I.
 
 Overview
 

 At the suppression hearing, the sole source of evidence relating to the seizure of the bag and its contents was the testimony of Sgt. Douglas S. Davis. Sgt. Davis has been a member of the District of Columbia Metropolitan Police Department for 16 years, and has been assigned to a special Drug Enforcement Administration task force for approximately four years. Sgt. Davis was the case agent in charge of the investigation relating to Jackson’s alleged narcotics activities.
 

 On February 5, 1981, an individual cooperating with the investigation was directed to attempt to obtain heroin from Jackson. In preparation for this controlled buy, the cooperating individual (Cl) was searched completely and equipped with a recording device. The Cl was then transported to the 3900 block of Benning Road, N.E., Washington, D. C., where he entered the premises of J & M Auto Brokers. Shortly thereafter, the Cl exited the premises in the company of Jackson. Both men entered a 1977 Cadillac limousine. The automobile was driven around the general area by Jackson. While in the automobile, the Cl obtained from Jackson a quantity of heroin.
 

 On August 31, 1981, Special Agent George Coleman, acting in an undercover capacity, met Jackson at a liquor store in Northeast Washington, D.C. In exchange for a small quantity of heroin, Coleman gave Jackson approximately one pound of quinine.
 
 [2]
 
 At approximately 8:13 p.m., Coleman observed Jackson enter the 1977 Cadillac limousine with the quinine and drive off. A surveillance team followed Jackson to an apartment building located at 3103 Goodhope Avenue, Hillcrest Heights, Maryland. Jackson parked the vehicle legally, near the side entrance of the apartment building. He then exited the vehicle and entered the building. At approximately 8:30 p.m., Jackson was arrested by Sgt. Davis and other agents while on the inside stairs of the apartment building. At the time of Jackson’s arrest, the agents searched his person and found the keys for the 1977 Cadillac limousine, which the agents knew to be owned by Jackson’s employer, M & J Limousine Service. The agents then placed a guard on the vehicle and proceeded to execute a search warrant for Apartment 301 of the building in which Jackson was arrested. During the search of the apartment the agents discovered a safe containing, among other things, approximately one pound of quinine. Although they were not then certain, the quinine in the safe appeared to be the same quinine given to Jackson earlier that evening by Special Agent Coleman.
 

 After completing their search of the apartment, the agents proceeded to the vehicle. According to Sgt. Davis, the vehicle was then seized for forfeiture because it had been used to facilitate narcotics transactions. 21 U.S.C. § 881. Sgt. Davis testified at the suppression hearing that both the February 5, 1981 controlled buy of heroin and the discovery of quinine in the apartment were considered by him in determining to seize the vehicle for forfeiture.
 

 According to Sgt. Davis, his sole reason for searching the vehicle was to determine whether it contained any “valuables” that would have to be removed for safekeeping. In other words, Sgt. Davis claims that he conducted an inventory search whose object was to protect the agents from subsequent lost property claims by Jackson or others.
 

 The agents first examined the vehicle’s passenger compartment. Finding nothing of value in that portion of the vehicle, they
 
 *1043
 
 proceeded to the locked trunk. Using the keys found on Jackson’s person, Sgt. Davis opened the trunk and viewed its contents. Resting on top of some clothes was an opaque, black paper bag that had been folded or twisted closed at the top. Sgt. Davis removed the bag from the trunk, opened it, and saw that it contained what appeared to be a large amount of cash. Sgt. Davis then returned the bag to the trunk, and the entire vehicle was removed to a basement parking garage at 400 6th Street, S.W., Washington, D.C. At the garage the vehicle was again searched and the bag with the money removed to the police department safe.
 

 Sgt. Davis testified that it was
 
 his
 
 regular practice to search vehicles seized for forfeiture for valuables, and that the initial search on Goodhope Avenue was conducted to determine the extent of the vehicle’s valuable contents. He also testified that the search of the vehicle on Goodhope was terminated after the money was found because of a gathering crowd and poor lighting conditions.
 

 Sgt. Davis testified that the vehicle’s locked trunk was opened, and a search for valuables conducted, because the trunks of other vehicles stored at the parking garage used by the agents had been broken into and their contents removed. According to Sgt. Davis, it was he, as the case agent, who determined what items in a seized vehicle would be searched for valuables. He also testified that he knew of no written regulations or other formal procedures governing inventory searches of seized or impounded vehicles. In addition, Sgt. Davis testified that not all of the vehicle’s contents were inventoried; only those which he considered to have value. Finally, due to a lack of sufficient storage space, only valuable items found in a vehicle were removed for safekeeping. No effort was made to contact the vehicle’s owner prior to searching it for valuables.
 

 Sgt. Davis also testified that he probably would have opened any closed container found in the vehicle, except for a container that itself had value, such as a briefcase. He stated on cross-examination that he opened the paper bag in the vehicle’s trunk because it may have contained “trash” and, given the shortage of storage space, he did not want to put nonvaluable containers in the police department safe.
 

 II.
 
 Discussion
 

 In opposing Jackson’s suppression motion, the Government first contends that no judicially authorized warrant or other process was necessary in this case. According to the Government, the 1977 Cadillac limousine was seized for forfeiture under 21 U.S.C. § 881(a)(4) and (b). The Government next contends that the warrantless search of the vehicle and its contents was a lawful inventory search.
 
 [3]
 

 See, e.g., South Dakota v. Opperman,
 
 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976);
 
 Cooper v. California,
 
 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
 

 Although the resolution of most search and seizure questions does not involve a bifurcated analysis, separating the search from the seizure, the Government’s reliance on 21 U.S.C. § 881 and the inventory exception to the warrant requirement makes it appropriate to conduct one in this case.
 
 See Walter v. United States,
 
 447 U.S. 649, 654, 100 S.Ct. 2395, 2400, 65 L.Ed.2d 410 (1980) (Opinion of Stevens, J.). Accordingly, the court will first determine whether the Government acted lawfully in seizing the vehicle without a warrant. Next, the court will address whether it was constitutionally permissible to conduct a warrant-less search of the seized vehicle and, if so, whether the search of the closed paper bag in the vehicle’s trunk can be sustained under an inventory rationale.
 

 
 *1044
 
 A.
 
 The Seizure
 

 The Supreme Court has not squarely addressed the Fourth Amendment implications of a warrantless seizure of a vehicle pursuant to a forfeiture statute such as section 881 of Title 21.
 
 [4]
 

 See
 
 2 W. LaFave,
 
 Search and Seizure: A Treatise on the Fourth Amendment
 
 § 7.3(b) (1978).
 
 Cf. G.M. Leasing Corp. v. United States,
 
 429 U.S. 338, 349-52, 97 S.Ct. 619, 626-28, 50 L.Ed.2d 530 (1977) (warrantless seizure of automobile from public street in satisfaction of Internal Revenue Service levy).
 
 See also Calero-Toledo v. Pearson Yacht Leasing Co.,
 
 416 U.S. 663, 676-88, 94 S.Ct. 2080, 2088-94, 40 L.Ed.2d 452 (1974) (rejecting procedural due process and just compensation challenge to state forfeiture statute). In this case, however, it is unnecessary for the court to determine whether the congressional authorization, contained in 21 U.S.C. § 881(b), to effect a warrantless seizure of a vehicle comports with constitutional standards. Jackson has challenged only the Government’s purported application of subsection 881(b) and the scope of the subsequent search, not the facial validity of the statute.
 
 Compare United States v. Bush,
 
 647 F.2d 357, 368-70 (3d Cir. 1981)
 
 with United States v. McCormick,
 
 502 F.2d 281, 285-89 (9th Cir. 1974).
 

 It is apparent that the 1977 Cadillac limousine was subject to forfeiture under 21 U.S.C. § 881(a)(4), because Government agents had witnessed Jackson use the vehicle on August 31, 1981 to transport the quinine given to him by Special Agent Coleman that same day in exchange for heroin. It is equally plain that the seizure of the vehicle was incident to Jackson’s arrest within the meaning of subsection 881(b)(1). Forfeiture of the vehicle occurred on August 31, 1981 when it was used by Jackson to transport the quinine, and the Government exercised exclusive control over the vehicle once it had possession of the keys.
 
 See O’Reilly v. United States,
 
 486 F.2d 208, 210 (8th Cir.),
 
 cert. denied,
 
 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973);
 
 United States v. Vallieres,
 
 443 F.Supp. 186, 190-91 (D.Conn.1977). The actual seizure of the vehicle occurred immediately after Jackson’s arrest when the agents placed it under guard. For the seizure to be incident to Jackson’s arrest it was not necessary for the arrest to have occurred in the vehicle or the formal seizure to have taken place in Jackson’s presence.
 
 See O’Reilly v. United States,
 
 486 F.2d at 209-10;
 
 United States v. Trotta,
 
 401 F.2d 514, 515 (4th Cir. 1968),
 
 cert. denied sub nom. Genovese v. United States,
 
 394 U.S. 908, 89 S.Ct. 1019, 22 L.Ed.2d 219 (1969).
 

 Accordingly, the court holds that the warrantless seizure of the 1977 Cadillac limousine on August 31, 1981 was lawful as a seizure incident to an arrest under 21 U.S.C. § 881(b)(1). It is unnecessary, therefore, for the court to address the meaning of the “probable cause” provision of subsection 881(b)(4).
 
 Compare United States v. Pappas,
 
 613 F.2d 324, 328-30 (1st Cir. 1979) (subsection 881(b)(4) requires contemporaneous probable cause and exigent circumstances)
 
 and O’Reilly v. United States,
 
 486 F.2d at 212-15 (Lay, J., dissenting) (same)
 
 and United States v. Kemp, Nos.
 
 J-81-0187 and J-81-0188 (D.Md. July 9, 1981),
 
 appeal pending,
 
 No. 81-5027 (4th Cir. 1981) (same)
 
 with United States v. Bush,
 
 647 F.2d at 366-68 (subsection 881(b)(4) requires only probable cause that the vehicle was at one time used in violation of subsection 881(a))
 
 and United States v. One 1977 Lincoln Mark V Coupe,
 
 643 F.2d 154, 157-58 (3d Cir. 1981) (same)
 
 and United States v. Pappas,
 
 613 F.2d at 332-34 (Campbell, J., concurring in the result) (same).
 

 B.
 
 The Search
 

 The legality of the search of the closed, black paper bag turns on the resolution of several preliminary issues. First, what was the basis of the Court’s decision in
 
 Cooper v. California,
 
 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)? Second, has
 
 Cooper
 
 
 *1045
 
 been modified or limited by
 
 South Dakota
 
 v.
 
 Opperman,
 
 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and other subsequent Supreme Court decisions addressing the nature of the interest protected by the Fourth Amendment? Finally, it may also be necessary to determine whether the rationale underlying the Supreme Court’s so-called “container” cases
 
 [5]
 
 applies to inventory searches in general, and to inventory searches predicated upon a prior, valid seizure for forfeiture purposes.
 

 In
 
 Cooper,
 
 the defendant was lawfully arrested for an alleged narcotics violation while unlocking his automobile. The vehicle was immediately searched and then impounded pursuant to a state statute pending a forfeiture proceeding. One week later, the police again searched the vehicle and discovered in the glove compartment a piece of brown paper. This piece of paper was introduced as evidence in Cooper’s trial. Only the legality of the second search was contested.
 

 Writing for the Court, Justice Black found the search of the vehicle and the glove compartment to be lawful under the Fourth Amendment. The precise basis of the Court’s decision in
 
 Cooper,
 
 however, is unclear. Several rationales are discussed in the opinion, two of which may not have survived subsequent decisions.
 

 First, Justice Black noted that the search of the vehicle “was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained.” 386 U.S. at 61, 87 S.Ct. at 790. Thus, it could be argued that the Court sanctioned the search under a probable cause theory.
 
 See United States v. Zaicek,
 
 519 F.2d 412, 416 (2d Cir. 1975) (Oakes, J., dissenting);
 
 United States v. Trotta,
 
 401 F.2d at 515 — 16; Note, Warrantless Searches and Seizures of Automobiles, 87
 
 Harv.L.Rev.
 
 835, 846 (1974).
 

 Second, it appears that the warrantless search in
 
 Cooper
 
 was approved because the police had a superior property interest in the vehicle. 386 U.S. at 61-62, 87 S.Ct. at 790-91.
 
 See Cady v. Dombrowski,
 
 413 U.S. 433, 452-53, 93 S.Ct. 2523, 2533, 37 L.Ed.2d 706 (1973) (Brennan, J., dissenting);
 
 United States v. Johnson,
 
 572 F.2d 227, 232-34 (9th Cir. 1978);
 
 United States v. Zaicek,
 
 519 F.2d 412, 414 (2d Cir. 1975);
 
 O’Reilly v. United States,
 
 486 F.2d at 210-11;
 
 United States
 
 v.
 
 Shye,
 
 473 F.2d 1061, 1065-66 (6th Cir. 1973).
 

 A third rationale supporting the result in
 
 Cooper
 
 is that because the police had lawful custody of the vehicle, they were entitled to search it for their own protection. 386 U.S. at 61-62, 87 S.Ct. at 790-91.
 
 See South Dakota v. Opperman,
 
 428 U.S. at 369, 96 S.Ct. at 3097;
 
 Cady v. Dombrowski,
 
 413 U.S. at 447, 93 S.Ct. at 2530;
 
 United States v. Sifuentes,
 
 504 F.2d 845, 848 (4th Cir. 1974).
 

 A final rationale can be derived from Justice Black’s application of the then prevailing interpretation of the relationship between the Fourth Amendment’s Warrant Clause and its general prohibition against unreasonable searches and seizures. “It is no answer to say that the police could have obtained a search warrant, for ‘[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.’ ” 386 U.S. at 62, 87 S.Ct. at 791,
 
 quoting United States v. Rabinowitz,
 
 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950).
 
 See United States v. Trotta,
 
 401 F.2d at 516.
 

 In
 
 Opperman,
 
 the Court addressed the constitutionality of warrantless inventory searches under circumstances where the police have lawful, temporary custody of a vehicle. Noting that the police often come to possess vehicles as part of their “commu
 
 *1046
 
 nity caretaking functions,” 428 U.S. at 368, 96 S.Ct. at 3096,
 
 quoting Cady
 
 v.
 
 Dombrowski,
 
 413 U.S. at 441, 93 S.Ct. at 2528, the Chief Justice identified in his opinion for the plurality three distinct interests justifying a warrantless inventory search: (1) the protection of the vehicle owner’s property that may be located in the vehicle; (2) the protection of the police from claims relating to lost possessions purportedly contained in the vehicle; and (3) protection of the police from potential danger. 428 U.S. at 369, 96 5. Ct. at 3097.
 

 In finding warrantless inventory searches reasonable under the Fourth Amendment, the Chief Justice noted three justifications for not requiring the procurement of a search warrant. First, there is a diminished expectation of privacy in an automobile. 428 U.S, at 368, 96 S.Ct. at 3096. Second, the inventory search at issue in
 
 Opperman
 
 was carried out in accordance with the standard procedures of the police department. 428 U.S. at 375, 96 S.Ct. at 3100. Finally, since there was no evidence suggesting that the inventory search was a pretext for an evidentiary search, the Warrant Clause and its probable cause requirement were irrelevant. 428 U.S. at 370 n.5 & 376, 96 S.Ct. at 3097 n.5 & 3100.
 

 In his concurring opinion, Justice Powell commented that because the search in
 
 Opperman
 
 did not fall within any of the established exceptions to the warrant requirement, the plurality was carving out a new exception.
 
 [6]
 
 428 U.S. at 381-82, 96 S.Ct. at 3103 (Powell, J., concurring). In his view, the constitutionality of warrantless inventory searches was to be determined by examining the purposes underlying the Warrant Clause. ‘
 

 According to Justice Powell, the interposition of a neutral magistrate is unnecessary because inventory searches “are not conducted in order to discover evidence of crime.” 428 U.S. at 383, 96 S.Ct. at 3104. In addition, since inventory searches “are conducted in accordance with established police department rules or policy and occur whenever an automobile is seized,” the law enforcement officer “does not make a discretionary determination to search based on a judgment that certain conditions are present.” 428 U.S. at 383, 96 S.Ct. at 3104.
 
 [7]
 
 Consequently, “there are no special facts for a neutral magistrate to evaluate.” 428 U.S. at 383, 96 S.Ct. at 3104.
 

 A second reason stated by Justice Powell for not requiring a warrant in the inventory search context is that there is no need to protect against hindsight justifications. “In the case of an inventory search conducted in accordance with standard police department procedures . . . [t]he absence of a warrant will not impair the effectiveness of a post-search review of the reasonableness of a particular inventory search.” 428 U.S. at 383, 96 S.Ct. at 3104.
 

 Finally, since the existence of standard procedures determines both whether a search will be conducted and its scope “no significant discretion is placed in the hands of the individual officer.” 428 U.S. at 384, 96 S.Ct. at 3104.
 
 [8]
 

 
 *1047
 
 Although both
 
 Cooper
 
 and
 
 Opperman
 
 set out various justifications for permitting warrantless inventory searches, neither case, apart from its own facts, identifies the permissible scope of such a search. Consequently, the constitutionally permissible scope of an inventory search must be deduced from the reasons why such searches were permitted in those cases.
 

 In the
 
 Opperman
 
 situation, the lower federal courts have applied the privacy-based rationale of the Supreme Court’s container cases to invalidate searches of containers discovered within a legally detained vehicle. The general principle to be derived from these cases is that while the police may search a vehicle for any of the purposes identified in
 
 Opperman,
 
 their custody of the vehicle does not thereby divest the owner of privacy expectations relating to items found within the vehicle. Further, the inventory search must be no more intrusive than is necessary to fulfill the purported purpose of the search.
 
 See, e.g., United States v. Wilson,
 
 636 F.2d 1161, 1164-66 (8th Cir. 1980) (locked trunk);
 
 United States v. Miller,
 
 608 F.2d 1089, 1101 (5th Cir. 1979) (portfolio);
 
 United States v. Bloomfield,
 
 594 F.2d 1200, 1201-03 (8th Cir. 1979) (closed knapsack);
 
 United States v. Davis,
 
 501 F.Supp. 23, 25-26 (N.D.Ga.1980) (briefcase);
 
 United States v. Ocampo,
 

 [9]
 

 492 F.Supp. 1211, 1234 (E.D.N.Y.1980) (taped cardboard box in trunk);
 
 United States v. Hill,
 
 458 F.Supp. 31, 33-37 (D.D.C.1978) (flight bag).
 
 Cf. United States v. Markland,
 
 635 F.2d 174, 176-77 (2d Cir. 1980),
 
 cert. denied,
 
 451 U.S. 991, 101 S.Ct. 2332, 68 L.Ed.2d 851 (1981) (insufficient expectation of privacy in zippered food storage bag).
 

 Whether, and if so the extent to which, the Supreme Court’s container cases apply to vehicles held for forfeiture is not altogether clear. In
 
 United States v. Bush,
 
 647 F.2d at 371, decided before
 
 Bobbins,
 
 the Third Circuit discussed the application of
 
 Sanders
 
 and
 
 Chadwick
 
 in the context of an inventory search of a vehicle seized pursuant to 21 U.S.C. § 881. In that case, the container sought to be suppressed was “an unsealed, indeed partially open, cardboard box,” that was discovered during a search of the vehicle’s trunk. 647 F.2d at 371. Without ruling expressly as to whether the container rationale applied to inventory searches of vehicles seized for forfeiture, the Third Circuit affirmed the District Court’s denial of the defendant’s suppression motion on the basis that he “did not have a sufficient expectation of privacy” in the cardboard box to require the procurement of a warrant prior to the search. 647 F.2d at 371.
 

 In
 
 United States v. Stewart,
 
 595 F.2d 500, 503 (9th Cir. 1979) the Ninth Circuit indicated that if it considered
 
 Chadwick
 
 to apply retroactively, which it did not, the court would have suppressed the contents of an attache case discovered in a vehicle seized pursuant to 21 U.S.C. § 881. In
 
 United States v. Vallieres,
 
 443 F.Supp. at 191, Chief Judge Claire held, on the basis of
 
 Chadwick,
 
 that the contents of two closed pieces of luggage, found in the trunk of an automobile seized under 21 U.S.C. § 881, had to be suppressed.
 

 It appears that only two of the four possible rationales underlying
 
 Cooper
 
 have survived subsequent developments in Fourth Amendment theory. One is that the police may search a vehicle lawfully in their custody for their own protection. This rationale has been expressly incorporated into
 
 Opperman’s
 
 three factor analysis. 428 U.S. at 369, 96 S.Ct. at 3097. The second rationale is that because the vehicle has been seized for forfeiture the police, or rather the governmental unit, has a possessory interest in the vehicle superior to that of the owner.
 
 See South Dakota v. Opperman,
 
 428 U.S. at 377 n.2, 96 S.Ct. at 3101 n.2 (Powell, J., concurring).
 

 
 *1048
 
 The probable cause rationale implied in
 
 Cooper,
 
 386 U.S. at 61, 87 S.Ct. at 790, appears to have been rejected by a majority of the justices as having any place in the law of inventory searches.
 
 See United States v. Chadwick,
 
 433 U.S. at 10 n.5, 97 S.Ct. at 2482 n.5;
 
 South Dakota v. Opperman,
 
 428 U.S. at 370 n.5 & 373, 96 S.Ct. at 3097 n.5 & 3099;
 
 id.
 
 at 383-84, 96 S.Ct. at 3104 (Powell, J., concurring). In any event, in this case the Government has not contended that the searching agents had probable cause to believe that the 1977 Cadillac limousine contained evidence of a crime.
 

 The final rationale underlying
 
 Cooper,
 
 based on the conception of the Fourth Amendment articulated by Justice Minton in
 
 United States v. Rabinowitz,
 
 339 U.S. at 66, 70 S.Ct. at 435, has been rejected repeatedly by various majorities of the Court.
 
 See, e.g., United States v. United States District Court,
 
 407 U.S. 297, 315 n.16, 92 S.Ct. 2125, 2136 n.16, 32 L.Ed.2d 752 (1972);
 
 Vale v. Louisiana,
 
 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970);
 
 Chimel v. California,
 
 395 U.S. 752, 764-65, 89 S.Ct. 2034, 2040-41, 23 L.Ed.2d 685 (1969);
 
 Katz v. United States,
 
 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).
 
 See also South Dakota v. Opperman,
 
 428 U.S. at 381, 96 S.Ct. at 3103 (Powell, J., concurring). It appears, therefore, that it is appropriate to read
 
 Cooper
 
 and
 
 Opperman
 
 together when considering the legality of a purported inventory search of a vehicle seized for forfeiture.
 
 [10]
 

 See South Dakota v. Opperman,
 
 428 U.S. at 373-74 n.8, 96 S.Ct. at 3099 n.8.
 

 An examination of the various opinions in
 
 Opperman
 
 reveals that a majority of the justices would not grant law enforcement authorities an unrestricted license to search lawfully impounded or seized vehicles. See
 
 South Dakota v. Opperman,
 
 428 U.S. at 375-76 & n.10, 96 S.Ct. at 3100 & n.10;
 
 id.
 
 at 380, 96 S.Ct. at 3102 (Powell, J., concurring);
 
 id.
 
 at 387-88 nn. 4, 5 & 6, 96 S.Ct. at 3106 nn. 4, 5 & 6 (Marshall, J., dissenting). Moreover, assuming that
 
 Cooper
 
 imports an additional justification to search in the case of vehicles seized for forfeiture, the governmental unit’s property interest in the vehicle, such interest would not alone negate any reasonable expectation of privacy respecting items of personal property located in the vehicle upon seizure.
 
 See Katz v. United States,
 
 389 U.S. at 351-52, 88 S.Ct. at 511;
 
 id.
 
 at 361, 88 S.Ct. at 516 (Harlan, J., concurring).
 
 See generally
 
 Note, Warrantless Searches and Seizures of Automobiles, 87
 
 Harv.L.Rev.
 
 at 847 — 48.
 

 Although not alone determinative of the constitutionality of a warrantless inventory search, the existence of, and compliance with, established regulations or guidelines relating to inventory searches is a crucial factor to be weighed when assessing the reasonableness of such a search. As Professor LaFave has commented:
 

 “What is needed in the vehicle inventory context, then, as is true of many other types of inspections or regulatory searches, is not probable cause but rather a regularized set of procedures which adequately guard against arbitrariness. This is why Justice Powell repeatedly emphasized that the inventory in question was ‘conducted strictly in accordance with the regulations of the Vermillion Police Department,’ and why the plurality stressed that
 
 Opperman
 
 squared with
 
 Cady
 
 in that in both instances
 

 the protective search was carried out in accordance with
 
 standard procedures
 
 in the local police department, * * * a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the care-taking function.
 

 4c 4< * * 4c 4:
 

 Inventories should not be upheld under
 
 Opperman
 
 unless the government shows
 
 *1049
 
 that there exists an established reasonable procedure for safeguarding impounded vehicles and their contents and that the challenged police activity was essentially in conformance with that procedure.”
 

 2 W. LaFave,
 
 Search and Seizure: A Treatise on the Fourth Amendment
 
 § 7.4(a) at 576 — 77 (1978) (footnotes omitted) (emphasis in original).
 

 Indeed, when considering vehicle searches purportedly conducted under the inventory exception, both federal
 
 [11]
 
 and state
 
 [12]
 
 courts have viewed the presence or absence of established police procedures to be of vital significance. In the instant case, Sgt. Davis was unable to identify any regulations, or other formal guidelines or procedures governing inventory searches of vehicles by members of the DEA special task force.
 
 [13]
 
 To the contrary, Sgt. Davis testified that it was
 
 his
 
 practice to search a vehicle for valuables, and that
 
 he
 
 determined what items had value and what items should be searched. Further, it is clear from Sgt. Davis’ testimony that it is not his practice to inventory all of a vehicle’s contents, much less remove all items from the vehicle or otherwise ensure against their loss. Finally, Sgt. Davis testified that he knew of no policy or practice regarding the contacting of the vehicle’s owner so that the owner could remove items from the vehicle he or she believed to have value.
 

 Without impugning necessarily the motives of Sgt. Davis, the court concludes that the search of the closed, black paper bag, and the seizure of its contents, is not sustainable under an inventory rationale. Unlike the situation in
 
 Opperman,
 
 the scope of the instant search was left to the absolute discretion of Sgt. Davis.
 
 See South Dakota v. Opperman,
 
 428 U.S. at 383-84, 96 S.Ct. at 3104 (Powell, J., concurring). In the absence of regulations or established procedures the danger of hindsight justifications is indeed great, particularly in cases such as this where the item of evidence was not in plain view and Jackson’s use of the vehicle to carry out his alleged narcotics crimes had been known to the Government for several months prior to the search. Consequently, although it appears that Sgt. Davis had the right to search the vehicle, for the purposes identified in
 
 Opperman,
 
 the absence of established standards precludes the use of the inventory exception to sanction his warrantless seizure of the money from the closed, black paper bag. The contents of the bag,- therefore, must be suppressed.
 

 In light of the above ruling, the court finds it unnecessary to determine whether, and if so the extent to which, the container rationale of
 
 Robbins
 
 and its predecessors
 
 [14]
 
 applies to warrantless searches of vehicles when the justification relied on for the search is the inventory exception.
 
 See United States
 
 v.
 
 Chadwick,
 
 433 U.S. at 13 n.7, 15 n.9, 97 S.Ct. at 2484 n.7, 2485 n.9.
 

 For the reasons set out above, it is this 18th day of December, 1981, by the United States District Court for the District of Maryland, ORDERED:
 

 
 *1050
 
 1. The motion of defendant Jackson to suppress the contents of the black paper bag seized on August 31, 1981 from the trunk of the 1977 Cadillac limousine, is GRANTED.
 

 2. The Clerk is instructed to forward a copy of this Memorandum and Order to counsel for the parties.
 

 [1]
 

 . Paper Nos. 35 & 50.
 

 [2]
 

 . Quinine is used to “cut” or dilute the strength of heroin.
 

 [3]
 

 . The Government has not contended that the search of the vehicle was either incident to a lawful arrest,
 
 e.g., Chimel v. California,
 
 395 U.S. 752, 89 S.ct. 2034, 23 L.Ed.2d 685 (1969), or pursuant to the so-called “automobile exception” to the warrant requirement.
 
 E.g., Chambers v. Maroney,
 
 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
 

 [4]
 

 . In
 
 Cooper,
 
 the Court did not address the legality of the automobile’s seizure. The only issue presented in that case was the legality of the subsequent warrantless search.
 
 Coolidge v. New Hampshire,
 
 403 U.S. 443, 464 n.21, 91 S.Ct. 2022, 2037 n.21, 29 L.Ed.2d 564 (1971).
 

 [5]
 

 .
 
 Robbins v. California,
 
 - U.S. -, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981);
 
 Arkansas
 
 v.
 
 Sanders,
 
 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979);
 
 United States v. Chadwick,
 
 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). For lower court decisions discussing the scope of the so-called “container" rule,
 
 see United States v. Ross, 655
 
 F.2d 1159 (D.C.Cir. 1981) (en banc),
 
 cert. granted,
 
 - U.S. -, 102 S.Ct. 386, 70 L.Ed.2d 205 (1981);
 
 United States v. Rivera,
 
 654 F.2d 1048 (5th Cir. 1981);
 
 United States v. Moschetta,
 
 646 F.2d 955 (5th Cir. 1981);
 
 United States v. Presler,
 
 610 F.2d 1206 (4th Cir. 1979).
 

 [6]
 

 . The plurality in
 
 Opperman
 
 identified
 
 Cooper
 
 as the first inventory search case. 428 U.S. at 372, 96 S.Ct. at 3098.
 

 [7]
 

 . In applying
 
 Opperman
 
 to nonforfeiture inventory searches, the Fourth Circuit has noted that the search at issue was conducted in accordance with uniform police procedures.
 
 See, e.g., Cabbler v. Superintendent, Virginia State Penitentiary,
 
 528 F.2d 1142, 1146 (4th Cir. 1975);
 
 United States v. Sifuentes,
 
 504 F.2d at 849.
 
 Cf. United States v. Prescott,
 
 599 F.2d 103, 105-06 (5th Cir. 1979) (despite lack of evidence as to standard police procedures, seizure of a gun was permissible under the plain view doctrine).
 

 [8]
 

 . In the preface to his analysis, Justice Powell commented;
 

 “Although the expectation of privacy in an automobile is significantly less than the traditional expectation of privacy associated with the home, . . . the unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances. But such a search is not at issue in this case. As the Court’s opinion emphasizes, the search here was limited to an inventory of the unoccupied automobile and was conducted strictly in accord with the regulations of the Vermillion Police Department.
 
 Upholding searches of this type provides no general license for the police to examine all the contents of such automobiles."
 

 
 *1047
 
 428 U.S. at 379-80, 96 S.Ct. at 3102 (citations and footnotes omitted) (emphasis supplied).
 

 [9]
 

 . The court in
 
 Ocampo
 
 found, however, that the defendants did not have a reasonable
 
 ex
 
 pectation of privacy in brown paper bags located on the floor of the passenger compartment. 492 F.Supp. at 1234-35.
 

 [10]
 

 . The court is constrained to reiterate that the analysis applicable to a search of a vehicle seized for forfeiture may be different where the Government contends that it had probable cause to search the vehicle for evidence of a crime, or when exigent circumstances were present. In this case, the Government has maintained consistently that the sole purpose for searching the vehicle was to ensure the safety of any valuables that might have been located therein.
 

 [11]
 

 .
 
 See, e.g., United States v. Staller,
 
 616 F.2d 1284, 1289-90 (5th Cir. 1980);
 
 United States v. Dall,
 
 608 F.2d 910, 913-14 (1st Cir. 1979),
 
 cert. denied,
 
 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 603 (1980);
 
 United States v. Hellman,
 
 556 F.2d 442, 443 — 44 (9th Cir. 1977);
 
 United States v. Callabrass,
 
 469 F.Supp. 323, 328-29 (S.D.N.Y. 1978); note 7
 
 supra.
 

 [12]
 

 .
 
 See, e.g., State v. Hudson,
 
 390 A.2d 509, 511 (Me. 1979);
 
 Schwasta v. United States,
 
 392 A.2d 1071, 1075-77 (D.C.App.1978);
 
 State v. White,
 
 387 A.2d 230, 233 (Me. 1978);
 
 Duncan v. State,
 
 281 Md. 247, 257-59, 378 A.2d 1108 (1977);
 
 State
 
 v.
 
 McDougal,
 
 68 Wis.2d 399, 228 N.W.2d 671 (1975);
 
 State v. Gwinn,
 
 301 A.2d 291, 292-93 (Del.1972);
 
 Cleckley v. State,
 
 42 Md.App. 80, 83-85, 399 A.2d 903 (1979);
 
 State
 
 v.
 
 McDaniel,
 
 156 N.J.Super. 347, 383 A.2d 1174, 1180 (App.Div. 1978);
 
 Commonwealth
 
 v.
 
 Tisserand,
 
 5 Mass.App. 383, 363 N.E.2d 530, 532 (1977).
 

 [13]
 

 . The Government has not contended that the inventory regulations of the District of Columbia Metropolitan Police Department were applicable to this' case.
 
 See Schwasta v. United States,
 
 392 A.2d at 1075-77. In any event, no evidence to that effect was offered by the Government at the suppression hearing.
 

 [14]
 

 .
 
 See
 
 note 5
 
 supra.